FARMER CITY STATE BANK, Plaintiff and Counterdefendant-Appellee, v. VERN W. GUINGRICH, Defendant and Counterplaintiff-Appellant.

Fourth District No. 4—85—0273

Opinion filed December 30, 1985.

Robert E. Martensen, of Martensen, Andrew & Niemann, of Paxton, for appellant.

John Stevens, of Bloomington, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiff filed a complaint against defendant seeking to enforce a loan guaranty agreement signed by defendant. Defendant's affirmative defenses alleging negligence and fraud were dismissed prior to trial. Following a bench trial, the trial court entered judgment for plaintiff and against defendant in the amount of $204,858.17 plus costs and denied defendant's request for reformation of the loan guaranty agreement. On appeal, defendant argues that the trial court improperly dismissed the affirmative defenses and that the trial court's finding that the evidence was insufficient to establish grounds for reformation is against the manifest weight of the evidence.

Plaintiff, Farmer City State Bank (bank) filed a complaint in the circuit court of DeWitt County against defendant, Vern Guingrich, seeking to enforce a loan guaranty agreement which provided that defendant would guarantee payment of any past, present, or future indebtedness or obligations of Lotus Grain & Coal Company (Lotus Grain) to the bank to the extent of $200,000. The complaint sought to enforce the guaranty to the extent of a deficiency judgment rendered against Lotus Grain and other debts and obligations of Lotus Grain. Defendant filed an answer in which he pleaded the defenses of negligence and fraud. Defendant alleged that the guaranty was intended to be limited to guaranteeing a letter of credit issued by the bank in the amount of $200,000 and that another guaranty signed by the directors of Lotus Grain was to have the effect of indemnifying defendant in case he suffered a loss on the guaranty he signed. Defendant alleged that the guaranty he signed was obtained by fraud in that the bank's officers falsely represented that the other guaranty would serve to indemnify him for any loss he suffered and that the bank's officers were negligent in preparing the guaranty agreements. Plaintiff filed a motion to strike the defenses alleged by defendant. The court granted plaintiff's motion to strike the defenses sounding in fraud and negligence. A bench trial was then held on plaintiff's complaint, and defendant's request for reformation of the guaranty which he signed. The following facts were elicited at trial.

Defendant had been in the grain business for nearly 40 years. At the time of the transactions involved in the instant action, defendant was the manager of Lotus Grain. The bank had handled the Lotus Grain credit line for as long as defendant had been associated with Lotus Grain. The primary loan officer with whom defendant dealt was Dean Bright. Bright testified at trial that his relationship with defend-

ant was a good and trusting relationship. Defendant stated that his relationship with the bank was friendly. In 1980 Bright went on a semiretired status at the bank.

In November 1979 the Illinois Department of Agriculture (Department) notified Lotus Grain that its grain dealer's bond would be increased from $37,000 to $100,000. At a hearing in December 1979 the Department informed Lotus Grain that its bond application would be temporarily approved if $80,000 of additional capital was posted on behalf of Lotus Grain. The Department agreed to accept a certificate of deposit in the amount of $67,000 in lieu of the bond and additional capital.

To satisfy the Department, the bank issued a certificate of deposit in the amount of $67,000 payable to the Department. The certificate of deposit was issued December 31, 1979, and its maturity date was February 29, 1980. Although the facts are not clear, Lotus Grain was apparently required to sign a note promising to pay the bank $67,000 plus interest upon the maturity of the certificate of deposit. As an additional prerequisite to the issuance of the certificate of deposit, the bank required defendant and three other officers or directors of Lotus Grain to guarantee payment of the $67,000 note. Bright prepared a loan guaranty agreement for the amount of $67,000 which defendant and the three officers or directors signed. The bank did not request that those signing the guaranty be responsible for payment of debts or obligations other than the note, and the printed loan guaranty form limited the loan guaranty agreement to the "note dated 12/31/79—due 2/29/80." Bright testified that although the normal procedure of the bank is not to limit a guaranty to a particular note or amount, it did so in that case. The parties agree that upon maturity of the certificate of deposit, the $67,000 debt of Lotus Grain was either paid or cancelled, thereby releasing the personal liability of defendant and the three other officers or directors who signed the loan guaranty agreement.

Late December 1979 or early January 1980, the Department requested that Lotus Grain post two bonds, a grain dealer's bond and a grain warehouse bond, each in the amount of $100,000. A bonding company agreed to post the bonds on behalf of Lotus Grain upon receipt of an irrevocable letter of credit in the amount of $200,000. The bank agreed to issue the letter of credit if defendant and each member of the board of directors executed a loan guaranty agreement in the amount of $200,000.

Bright told defendant that the bank would issue the letter of credit only if it received a guaranty from defendant and each director

of Lotus Grain. Bright testified that the personal guaranties were required due to the deteriorating financial condition of Lotus Grain. Bright stated that although all of his conversations with defendant at the time concerned the letter of credit, there was no discussion concerning limiting the guaranties to the letter of credit. Defendant testified that Bright mentioned that he should sign a guaranty and that the directors should become more involved by also signing a guaranty. Defendant testified that in all of his conversations with Bright, there was no discussion concerning debts or obligations of Lotus Grain other than the letter of credit.

Prior to execution of the guaranty documents, Bright became semiretired and left for a Florida vacation. In Bright's absence, Dick Maxwell prepared the guaranties and the letter of credit at Bright's direction. Bright instructed Maxwell to secure a loan guaranty agreement to enable the bank to issue the letter of credit. In written instructions to Maxwell, Bright stated that "Vern and the Board should guaranty the letter of credit." At trial, Bright stated that his intention was that there would be one guaranty agreement which both defendant and the directors would sign obligating them all equally.

Maxwell prepared the guaranty agreements with the understanding that Bright had determined that Lotus Grain was not worthy of credit and that Bright wanted additional security. Maxwell prepared two loan guaranty agreements using printed form documents. One guaranty was to be signed by defendant and the other was to be signed by the directors of Lotus Grain. The guaranty to be signed by defendant designated Lotus Grain as the debtor while the guaranty to be signed by the directors designated defendant as the debtor. Maxwell's understanding of the effect of the guaranties was that the guaranty signed by defendant would enable the bank to issue the letter of credit and would protect the bank in case of a loss on the letter of credit and that the guaranty signed by directors would indemnify defendant should he suffer a loss on his personal guaranty. At no time had Maxwell been directed to obtain security for debts or obligations of Lotus Grain other than the letter of credit, and no records of the bank, other than the loan guaranty agreements themselves, indicate that the guaranty was intended to secure any and all obligations of Lotus Grain. However, the bank's files contained a document, in Maxwell's handwriting, stating, in part, "Vern to guaranty *the* $200,000."

After Maxwell completed the documents, defendant went to Maxwell's office at the bank. Defendant signed a loan guaranty agreement, guaranteeing payment of any and all of Lotus Grain's debts and obligations to the extent of $200,000. Although Maxwell made no

statement to defendant concerning limiting the guaranty to the letter of credit, defendant assumed that such a limitation was present in the document. Defendant recalled that he did not read the guaranty as carefully as he should have. Defendant testified that in his conversations with Maxwell, no debts or obligations of Lotus Grain other than the letter of credit were discussed. Defendant also testified that had he known that the written guaranty covered any and all obligations of Lotus Grain, he would not have executed the document.

Bright testified that loan guaranty agreements normally cover the debtor's entire credit line. Maxwell testified that most of the bank's loan guaranty agreements normally are not limited to a particular note or obligation.

At the time defendant signed his guaranty, Maxwell gave defendant a supporting document for the directors to sign. Defendant stated that Maxwell had told him that the guaranty to be signed by the directors would cover him and provide him with a guaranty. Maxwell testified that he did not inform defendant of his rights; and obligations under the two guaranties. Defendant obtained the necessary signatures of the directors, and the guaranty was returned to Maxwell.

Maxwell issued an irrevocable letter of credit to the bonding company in the amount of $200,000. The bonding company then issued the necessary bonds to the Department.

The bonds secured by the letter of credit expired in December 1980. The bank's obligations under the letter of credit were either released or cancelled. In any event, the bank made no payment nor suffered a loss on account of issuing the letter of credit.

In 1983, the bank brought suit against Lotus Grain to foreclose on various mortgages held by the bank. On July 15, 1983, the bank informed defendant of its intention to enforce the guaranty he signed to cover any deficiency up to $200,000. A deficiency judgment was apparently rendered against Lotus Grain. The instant action was filed to enforce defendant's guaranty to the extent of the deficiency judgment and other debts and obligations of Lotus Grain.

Following the trial the court entered a written order which stated as follows:

"Illinois law recognizes a presumption that a written instrument shows the intent of the parties. To justify its reformation, the grounds therefor must be established by clear and convincing evidence, leaving no reasonable doubt as to the intention of the parties and a mere preponderance of the evidence is insufficient. Evidence to justify a reformation should approach a certainty. [Citation.]

> The evidence here does not establish clearly and convincingly the grounds for reformation. It cannot be said to leave no reasonable doubt as to intention of the parties."

The court proceeded to deny defendant's request for reformation of the guaranty agreement. The court determined that the entire amount of debts for which defendant is responsible, including attorney fees incurred in enforcing the guaranty, totaled $204,858.17. Accordingly, judgment was entered in favor of plaintiff and against defendant in the amount of $204,858.17, plus costs.

Defendant appeals. On appeal, defendant argues that the trial court improperly dismissed his affirmative defenses alleging negligence and fraud and that the trial court's finding that the evidence was insufficient to establish grounds for reformation is against the manifest weight of the evidence.

Defendant's third affirmative defense, sounding in negligence, alleged that the bank had a duty to exercise due care in the preparation of the guaranty documents and that its failure to do so resulted in defendant executing a guaranty of Lotus Grain's debts without having a right of indemnification from the directors as the bank had represented. In response to defendant's argument that the trial court improperly dismissed the third affirmative defense, the bank argues that it owed no duty to defendant with respect to drafting the guaranty documents and that defendant failed to plead facts sufficient to allege such a duty.

 A motion to strike an affirmative defense admits all well-pleaded facts constituting the defense, together with all reasonable inferences therefrom, and a court of review will vacate a dismissal where such facts and inferences raise a possibility of recovery. (*People ex rel. Oak Supply & Furniture Co. v. Department of Revenue* (1976), 62 Ill. 2d 210, 342 N.E.2d 53; *Epstein v. Yoder* (1979), 72 Ill. App. 3d 966, 391 N.E.2d 432.) A pleading alleging negligence must allege facts from which the law will raise a duty and the absence of such allegations justifies dismissal of the pleading on motion. (*Anderson v. Davis Development Corp.* (1968), 99 Ill. App. 2d 55, 241 N.E.2d 222.) Defendant argues that a duty existed between the parties since a confidential or fiduciary relationship existed between the parties.

A fiduciary or confidential relationship may be found in one of two ways. A fiduciary relationship may be presumed from the relationship of the parties, such as an attorney-client relationship, or may be found to exist by the facts of a particular situation, such as a relationship where trust is reposed on one side and there is resulting superiority and influence on the other side. (*De Witt County Public*

*Building Com. v. County of De Witt* (1984), 128 Ill. App. 3d 11, 469 N.E.2d 689; *Paskas v. Illini Federal Savings & Loan Association* (1982), 109 Ill. App. 3d 24, 440 N.E.2d 194.) Defendant argues that a fiduciary relationship exists in the instant case due to both the relationship of the parties and the facts of the particular situation.

■ Defendant argues that the relationship between guarantor and creditor should be presumed to be a fiduciary relationship as a matter of law. The bank argues that the relationship between a guarantor and creditor is nothing more than a contingent debtor-creditor relationship; therefore, the relationship is not a fiduciary relationship as a matter of law under the principles set forth in *Paskas v. Illini Federal Savings & Loan Association* (1982), 109 Ill. App. 3d 24, 440 N.E.2d 194. In *Paskas*, the court noted that the relationship of a bank and its depositor is a debtor-creditor relationship rather than a fiduciary relationship. (See also *Bank Computer Network Corp. v. Continental Illinois National Bank & Trust Co.* (1982), 110 Ill. App. 3d 492, 442 N.E.2d 586.) Similarly, the relationship between guarantor and creditor is a debtor-creditor relationship rather than a fiduciary relationship; compare *Commercial Discount Corp. v. Bayer* (1978), 57 Ill. App. 3d 295, 372 N.E.2d 926 (holding that a guarantor is a debtor within the meaning of article 9 of the Uniform Commercial Code). Therefore, a fiduciary relationship does not exist as a matter of law between a guarantor and a creditor.

Defendant urges this court to follow the case of *Stewart v. Phoenix National Bank* (1937), 49 Ariz. 34, 64 P.2d 101, in which the Arizona Supreme Court held that, as a matter of law, a fiduciary relationship exists between a bank and a customer for whom the bank has served as financial advisor for a number of years. Such a proposition has been rejected twice by the appellate court (see *De Witt County Public Building Com. v. County of De Witt* (1984), 128 Ill. App. 3d 11, 469 N.E.2d 689 (noting that a fiduciary relationship does not exist between a bank and a customer with whom the bank has done business for a number of years); *Paskas v. Illini Federal Savings & Loan Association* (1982), 109 Ill. App. 3d 24, 440 N.E.2d 194 (specifically rejecting *Stewart v. Phoenix National Bank* (1937), 49 Ariz. 34, 64 P.2d 101)). Furthermore, defendant pleaded no facts showing that the bank had served as his financial advisor for a number of years.

Defendant next argues that the relationship between the bank and defendant is a fiduciary relationship due to the facts of the particular case. The bank argues that defendant failed to plead sufficient facts in his pleading setting up the negligence defense; therefore, the court properly dismissed the pleading.

■ The burden of pleading and proving the existence of a fiduciary relationship lies with the party seeking relief, and where the alleged relationship does not exist as a matter of law, facts from which a fiduciary relationship arises must be pleaded and proved by clear and convincing evidence. (See *Apple v. Apple* (1950), 407 Ill. 464, 95 N.E.2d 334; *De Witt County Public Building Com. v. County of De Witt* (1984), 128 Ill. App. 3d 11, 469 N.E.2d 689 (noting that more than bare allegations are required).) The party seeking to establish a fiduciary relationship must show that he placed trust and confidence in another so that the latter gained influence and superiority over the former. (*Kurti v. Fox Valley Radiologists, Ltd.* (1984), 124 Ill. App. 3d 933, 464 N.E.2d 1219.) Factors to be considered in determining whether a fiduciary relationship exists include the degree of kinship, disparity of age, health, mental condition, education and business experience between the parties, and the extent to which the allegedly servient party entrusted the handling of his business and financial affairs to the other and reposed faith and confidence in him. (*Kester v. Crilly* (1950), 405 Ill. 425, 91 N.E.2d 419; *Lamb v. Lamb* (1984), 124 Ill. App. 3d 687, 464 N.E.2d 873.) In the instant case, defendant failed to plead any facts showing that the above-mentioned factors were present. Although at trial defendant set forth evidence regarding the long-term relationship between the bank and defendant and the disparity in education and business experience between defendant and Maxwell, none of these facts were alleged in defendant's defensive pleading. The only fact alleged is that the bank represented to defendant that the guaranty signed by the directors would serve to indemnify him in case of loss and that defendant relied on this representation. Such an allegation is insufficient to establish that defendant placed special trust and confidence in the bank. Defendant pleaded neither facts sufficient to show that a fiduciary relationship existed between himself and the bank nor the ultimate conclusion that such a relationship existed.

■ A fiduciary relationship does not exist as a matter of law between a guarantor and a creditor. Although such a relationship may exist between a guarantor and a creditor under the facts of a particular case, we find that defendant failed to allege any facts which would give rise to such a duty in the instant case. Because defendant's third affirmative defense alleging negligence failed to allege the existence of a duty between the parties, the trial court properly dismissed the defense.

Defendant's second affirmative defense, sounding in fraud, alleged that at the time defendant executed his personal guaranty, the offi-

cers of the bank falsely and fraudulently represented to him that the guaranty to be signed by the directors of Lotus Grain would serve to protect and to indemnify defendant in case he suffered a loss under his personal guaranty. In response to defendant's argument that the trial court improperly dismissed the second affirmative defense, the bank argues that defendant failed to allege that a confidential and fiduciary relationship existed between the parties and that defendant's claim of fraud cannot be raised where defendant was given an opportunity to discover the truth of the bank's representations and failed to do so.

■ A party seeking to establish fraud may proceed on one of two theories—actual fraud or constructive fraud. To state a claim for actual fraud, a pleading must allege that a false statement of material fact was made, that the party making the statement knew or reasonably believed it to be untrue, that the party to whom the statement was made had a right to rely on it and did so, that the statement was made for the purpose of inducing the other party to act, and that reliance by the person to whom the statement was made led to his injury. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324.) To state a claim for constructive fraud, a pleading must allege the breach of a duty arising from a fiduciary or confidential relationship whereby the fiduciary has profited. (*In re Estate of Trampenau* (1980), 88 Ill. App. 3d 690, 410 N.E.2d 918.) Where a claim for constructive fraud is alleged, the fiduciary is presumed to have acted fraudulently and must prove by clear and convincing evidence that the transaction was fair and equitable, and did not result from undue influence. *In re Estate of Trampenau* (1980), 88 Ill. App. 3d 690, 410 N.E.2d 918.

In the instant case, defendant was not required to allege the existence of a fiduciary relationship. Defendant's second affirmative defense clearly sets forth a claim for actual fraud rather than constructive fraud, and therefore defendant was not required to allege the existence of a fiduciary relationship between the parties.

■ The bank next argues that the trial court properly dismissed defendant's claim of fraud on the basis of the oft-cited principle that a party cannot claim that he has been defrauded by a misrepresentation when he has been afforded the opportunity to ascertain the truth of the representation and has failed to do so. (*Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 169 N.E.2d 229.) However, under the facts of the instant case, we conclude that application of *Schmidt* would be improper.

The principle enunciated in *Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 169 N.E.2d 229, has been characterized as the "older approach,"

and in some cases that principle has been defeated by a conflicting yet "better reasoned" approach. (*Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 454 N.E.2d 723.) This latter approach provides that a person who commits an intentional misrepresentation of fact, knowing that the other party will thereby be induced to act, may not escape liability for fraud by claiming that the other party acted negligently in that he failed to discover the falsity of the representation despite his opportunity to do so. (*Eisenberg v. Goldstein* (1963), 29 Ill. 2d 617, 195 N.E.2d 184; *Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 454 N.E.2d 723; *Mother Earth, Ltd., v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 390 N.E.2d 393.) Resolution of these conflicting principles involves a consideration of all relevant circumstances of a case to determine whether a particular person's reliance on a misrepresentation was justified. (*Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 454 N.E.2d 723.) Accepting as true the facts alleged in defendant's second affirmative defense, defendant's reliance on the bank's alleged representation may have been justified.

The courts have recognized that the action or statements of the person making a misrepresentation may inhibit the other person's inquiries or lull him into a false sense of security, thereby blocking investigation into the truth of the representation. (*Carter v. Mueller* (1983), 120 Ill. App. 3d 314, 457 N.E.2d 1335; *Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267.) In the instant case, defendant alleged that the bank falsely represented to him that the guaranty to be signed by the directors would protect him in case he suffered a loss on the guaranty to be signed by him. That representation, if made, may have lulled defendant into a false sense of security by making him believe that the bank was attempting to protect defendant's interests as well. A false representation made by an experienced banker as to the nature of loan instruments is calculated to disarm a relatively inexperienced person. (*Melvin State Bank v. Crowe* (1968), 97 Ill. App. 2d 82, 239 N.E.2d 483.) Defendant's second affirmative defense alleged facts sufficient to justify defendant's reliance on the bank's alleged misrepresentation and, therefore, the bank cannot escape liability by claiming that defendant failed to discover the falsity of the alleged representation.

Although we have determined that the trial court improperly dismissed defendant's second affirmative defense, an examination of the record reveals that defendant was not prejudiced by the dismissal. Even though it had dismissed the second affirmative defense, the trial

court permitted the parties to introduce evidence concerning the bank's alleged fraud. At the conclusion of the trial the trial court concluded that the evidence did not support defendant's claim of fraud. Under these circumstances, the court's error in dismissing defendant's second affirmative defense is harmless.

 Defendant's final argument is that the trial court improperly denied his request for reformation on the ground of mutual mistake. At trial defendant claimed that although the parties intended that the guaranty be limited to the letter of credit, the form signed by defendant was not so limited, since it covered any and all debts and obligations of Lotus Grain. The bank argued that the agreement reflected the agreement of the parties. As noted earlier, the trial court found in favor of the bank. On appeal, defendant argues that the judgment of the trial court is against the manifest weight of the evidence.

A written instrument is presumed to express the intent of the parties and will not be reformed unless the evidence establishes mutual mistake or some other ground for reformation. (*Beynon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 455 N.E.2d 246.) In a reformation action, the party seeking reformation of a written instrument has a higher burden of proof than in an ordinary civil lawsuit and must prove grounds for reformation by clear and convincing evidence. (118 Ill. App. 3d 754, 452 N.E.2d 557; *Hanes v. Roosevelt National Life Insurance Co.* (1983), 116 Ill. App. 3d 411, 452 N.E.2d 357; *Sheldon v. Colonial Carbon Co.* (1983), 116 Ill. App. 3d 797, 452 N.E.2d 542; *Texas Eastern Transmission Corp. v. McCrate* (1979), 76 Ill. App. 3d 828, 395 N.E.2d 624; *Parrish v. City of Carbondale* (1978), 61 Ill. App. 3d 500, 378 N.E.2d 243; *State Farm Mutual Automobile Insurance Co. v. Hanson* (1972), 7 Ill. App. 3d 678, 288 N.E.2d 523.) In order for a party seeking reformation on the basis of mutual mistake to meet his burden of proof, the mistake must be one of fact rather than law, the mistake must be mutual and common to both parties to the instrument, and the mistake must be in existence at the time of the instrument's execution. (*Beynon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 455 N.E.2d 246; *State Farm Mutual Automobile Insurance Co. v. Hanson* (1972), 7 Ill. App. 3d 678, 288 N.E.2d 523.) In a reformation action a reviewing court will not disturb the decision of the trial court unless it is against the manifest weight of the evidence. *Sheldon v. Colonial Carbon Co.* (1983), 116 Ill. App. 3d 797, 452 N.E.2d 357; *Parrish v. City of Carbondale* (1978), 61 Ill. App. 3d 500, 378 N.E.2d 243.

Initially, we note that the trial court applied an incorrect standard

of proof to defendant's claim for reformation. Although the court correctly stated that grounds for reformation of a written instrument must be proved by clear and convincing evidence, the court incorrectly stated the evidence must "approach a certainty" and leave "no reasonable doubt as to the intention of the parties." While it is true that a mere preponderance of the evidence is insufficient (*Hanes v. Roosevelt National Life Insurance Co.* (1983), 116 Ill. App. 3d 411, 452 N.E.2d 357), a party seeking reformation must prove the existence of grounds for reformation by clear and convincing evidence. (See cases cited above.) Those cases in which the courts have required satisfactory evidence, leaving no reasonable doubt as to the mutual intention of the parties, have generally involved actions to reform a deed or other instruments affecting land rather than actions to reform written instruments affecting contractual obligations or personal obligations. (See, *e.g., Pulley v. Luttrell* (1958), 13 Ill. 2d 355, 148 N.E.2d 731; *Quist v. Streicher* (1960), 18 Ill. 2d 376, 164 N.E.2d 44.) Reformation of instruments affecting personal obligations will be granted when the party seeking reformation establishes the existence of grounds for reformation by clear and convincing evidence.

▪ Applying the proper standard of proof to the facts herein, we conclude that defendant established as a matter of law the existence of a mutual mistake as grounds for reformation by clear and convincing evidence. Our conclusion rests primarily on three significant facts.

First, the earlier transaction between the parties in which the bank limited the guaranties of the directors and defendant to the certificate of deposit provides strong evidence that the parties intended that the guaranties of the directors and defendant be limited to the letter of credit in the later transaction. This is especially true since both transactions were part of a comprehensive effort to ensure that Lotus Grain posted the necessary bonds with the Department. More importantly, the evidence concerning the earlier transaction negates the bank's contention that its routine practice was to not limit guaranty agreements. As established by the earlier transaction, the routine practice of the bank with respect to this particular guarantor was to limit his potential liability to only certain debts or obligations of Lotus Grain.

Second, we note that the parties at no time discussed debts or obligations of Lotus Grain other than the letter of credit. In light of the bank's argument that Lotus Grain's financial condition was deteriorating, it is difficult to believe that debts or obligations other than the letter of credit were not discussed unless the parties intended that

only the letter of credit would be covered by the guaranty.

Third and most importantly, the instructions to Maxwell from Bright stating that "Vern and the Board should guaranty the letter of credit" and the note written by Maxwell stating "Vern to guaranty *the* $200,000" provide the strongest evidence of the bank's intention to limit the coverage of defendant's guaranty to the letter of credit. The instructions by Bright concerning a guaranty of only one obligation of Lotus Grain and Maxwell's emphasis on *"the"* $200,000 letter of credit best evidences the bank's intent at the time of the transaction.

For the foregoing reasons, we conclude that the evidence clearly and convincingly establishes as a matter of law that a mutual mistake existed justifying reformation of the guaranty signed by defendant. Any contrary conclusion would be against the manifest weight of the evidence. We therefore reverse the judgment of the trial court and remand the case with instructions to enter judgment in favor of defendant and against plaintiff.

Reversed and remanded with instructions.

GREEN and MORTHLAND, JJ., concur.