*In re* ESTATE OF LOUISE ROTHENBERG, Deceased (Louise C. Koehler, Petitioner-Appellant, v. Lois H. Siebrandt, Indiv. as Ex'r of a purported Last Will and Testament of Louise Rothenberg, Deceased, and as Beneficiary of Bremen Bank and Trust Company, *et al.*, Respondents-Appellees).

First District (2nd Division) No. 87—2538

Opinion filed November 9, 1988.

George E. Sangmeister, of McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, of Joliet, for appellant.

Richard L. Hutchison, of Hutchison, Anders & Associates, P.C., of Tinley Park, for appellees.

JUSTICE EGAN delivered the opinion of the court:

This case involves a dispute between two sisters over the disposition of property made by their mother before her death.

The complaint brought by Louise Koehler in supplementary proceedings in the estate of Louise Rothenberg was in four counts. Count III was dismissed by agreement. Count I alleged lack of testamentary capacity to execute a will; count II alleged undue influence on the part of the defendant Lois Siebrandt over her mother, Louise Rothenberg, in the execution of the will; and count IV alleged that the defendant was a fiduciary who used undue influence over a mentally incompetent mother to dictate a change of beneficiaries in a land trust and prayed for imposition of a constructive trust upon Louise Koehler. The plaintiff had filed a jury demand, but count IV was severed and tried before the court. Counts I and II are still pending in the circuit court. In his finding in favor of the defendant, the trial judge expressly held that the evidence did not establish a fiduciary relationship between the defendant and her mother. The plaintiff contends that that finding was against the manifest weight of the evidence.

■ An understanding of the issue requires a preliminary discussion of the law. Once a fiduciary relationship has been shown, the law presumes that any transaction between the parties by which the fiduciary has profited is fraudulent. The burden then shifts to the fiduciary to prove by clear and convincing evidence that the transaction was not the result of undue influence. If the burden cannot be met, the transaction will be set aside. (*Brown v. Commercial National Bank* (1969), 42 Ill. 2d 365, 247 N.E.2d 894; *In re Estate of Trampenau* (1980), 88 Ill. App. 3d 690, 410 N.E.2d 918.) Thus, the plaintiff's

position may be summarized: The trial court's finding that Lois Siebrandt was not a fiduciary to her mother was against the manifest weight of the evidence, and, therefore, Lois Siebrandt was required to establish the fairness of the transaction by clear and convincing evidence, which she failed to do, as a matter of law. That being so, we are asked to reverse the judgment and remand with directions to enter judgment for the plaintiff. Alternatively, we are asked to remand for a new trial.

■ The burden of proving the existence of a fiduciary relationship lies with the party seeking relief. (*Farmer City State Bank v. Guingrich* (1985), 139 Ill. App. 3d 416, 487 N.E.2d 758.) A fiduciary relationship may be found in one of two ways: It may be presumed from the relationship of the parties, such as in an attorney-client relationship, or, it may arise from the facts of particular situation, for example, where there is trust reposed on one side and resulting superiority and influence on the other. (*Farmer City State Bank*, 139 Ill. App. 3d at 422-23.) Where the alleged fiduciary relationship does not exist as a matter of law, the facts from which such a relationship arises must be proved by clear and convincing evidence. (*Apple v. Apple* (1950), 407 Ill. 464, 95 N.E.2d 334.) The immediate issue before us, therefore, is whether the trial court's conclusion that the plaintiff had failed to establish a fiduciary relationship between the defendant and her mother by clear and convincing evidence was clearly erroneous.

Louise Rothenberg owned real estate consisting of a family home and adjacent lots in Cook County (the subject property). On May 16, 1976, she added the plaintiff as a joint tenant on the subject property. In February 1977, Louise Rothenberg met in the office of an attorney, Leland Rayson, with the plaintiff and another daughter, Ruth Birdwell. Birdwell testified that she came from Texas at her mother's request. Her mother was upset with the plaintiff over the subject property. After the meeting, Rayson sent a letter to the plaintiff stating that her mother was confused at the time she made the plaintiff a joint tenant. Shortly thereafter, the plaintiff and her attorney met in Rayson's office with her mother, the defendant and Ruth Birdwell. The plaintiff executed documents conveying her interest in the real estate back to her mother. She also transferred back to her mother her interest in a joint bank account. She testified that there was an agreement that, upon her mother's death, she and her sisters and the heirs of her deceased brother would each receive one-fourth share of the estate.

On May 9, 1977, the deceased executed a land trust document

covering the subject property with herself as the beneficiary. Her three daughters and the children of her deceased son were the joint contingent beneficiaries. Two days later, the deceased executed an amendment to the land trust agreement, again with herself as beneficiary; but the contingent beneficiaries were only the defendant, Ruth Birdwell, and the grandchildren.

On June 11, 1977, the decedent met with her attorney, Franklin Klein, to prepare a new will. The will left the subject property to the defendant only. The residuary clause left 35% to the defendant, 35% to Ruth Birdwell, 20% to her grandchildren and 10% to the plaintiff. She also made the plaintiff the sole beneficiary of her life insurance policy valued at about $2,000. The will contained the following language:

> "I wish to state that I have previously made gifts from time to time to my said daughter [the plaintiff] and furthermore, I consider that she is in excellent financial condition."

In March 1979, the defendant called the Bremen Bank, the land trustee, at the decedent's request, according to the defendant's testimony, and directed that a new trust be created with the defendant as sole contingent beneficiary. That trust was created on March 20, 1979.

On August 2, 1979, the defendant filed a petition in the probate division of the circuit court, asking that her mother be declared disabled due to "senility and mental incapacity and being unable to manage her estate or financial affairs." On October 4, 1979, the court found that the decedent was "totally without understanding or capacity to make or communicate decisions regarding her person and totally unable to manage her estate or financial affairs." The Bremen Bank and Trust Company was named guardian, pursuant to an agreement between the defendant and the plaintiff, who had objected to the defendant being named guardian and had asked that she be named the guardian instead.

Louise Rothenberg died in a nursing home on April 8, 1984.

The plaintiff contends that the trust executed on May 11, 1977, removing her as a beneficiary, two days after the creation of a trust making her a beneficiary, and the execution of the trust in March 1979, were the results of violations of the fiduciary duty owed by the defendant to her mother.

■■ The factors which may be considered in determining whether a fiduciary relation exists are the degree of kinship, disparity in age, health, mental condition, education and business experience between the parties and the extent to which the allegedly servient party entrusted the handling of his business and financial affairs to the domi-

nant party and reposed faith and confidence in him. (*Farmer City State Bank v. Guingrich* (1985), 139 Ill. App. 3d 416, 487 N.E.2d 758.) Two things must appear: that one party was, in fact, "servient" and the other party "dominant." To that end, the plaintiff sought to establish that her mother's mental condition was such that she could not manage her own affairs and that she looked to the defendant to do so.

■ In his opening statement, the attorney for the plaintiff said that the sole question before the court was "whether the decedent was competent to understand the trust she was creating and/or was she under the influence of her daughter, Lois Siebrandt." In the defendant's attorney's opening statement, he said that the "matter deals with the competency of the plaintiff [*sic*]." In explaining the reason for his finding, the judge said that it was "very clear to [him] the decedent knew what she wanted to do."

The question of the decedent's competency centers on two dates, May 11, 1977, and March 20, 1979. We will first consider May 11, 1977. It would serve no purpose to recite all of the testimony, which was often conflicting; but it is to be noted that some of the uncontested evidence favored the plaintiff. The defendant said that from mid-1976 her mother was confused and did not always know what she was doing. Dr. Claude Otto, the decedent's physician for several years, testified that during that period, the decedent, who was 78 years old in 1976, had difficulty remembering things and answered questions briefly and without much explanation. It cannot be denied that the puzzling, sudden change of heart on the part of the decedent when she removed the plaintiff's name from the trust she had created only two days before is a circumstance a fact finder would consider favorable to the plaintiff's position.

The change is even more puzzling because neither the plaintiff nor defendant knew about the amended trust until after Louise Rothenberg died. Ruth Birdwell testified that she did not remember whether she knew of the amendment. The amendment is dated May 9, 1977, the same day the original trust agreement was signed, and bears the name of Leland Rayson, although his name was crossed off the document. He testified he could not remember preparing the amendment, but he did recall that the decedent was in his office that date to sign a will, not the will in issue. Later, he said it "would appear" that he had not drawn up the amendment. After that he said it was hard for him to say, but he probably prepared the document.

The trial court, on the other hand, also heard evidence supporting the defendant's position. First, it was conceded by the plaintiff that

her mother was competent when she executed the trust agreement on May 9, two days before she became allegedly incompetent. The decedent lived alone at that time and, it may be inferred, was able to take care of herself. Rayson, an attorney for 37 years and experienced in the type of transaction involved, testified that the decedent carried out the legal acts necessary and had the capacity to do so. Ruth Birdwell also believed her mother to be in a good mental state and capable of making legal decisions regarding her property.

The trustee bank signed the amendment through a vice-president and an assistant secretary. That same vice-president had signed the trust executed on May 9, but a different assistant secretary had signed that one. None of those witnesses was called to testify by the plaintiff, who had the burden of proof. The first trust provided that bills should be mailed to Leland Rayson or Louise Rothenberg. The amendment provided that bills were to be mailed to Louise Rothenberg only.

In June 1977, the decedent was examined by Dr. Otto, who testified that the decedent at that time seemed to be in stable mental health and was able to answer his questions and make logical decisions. He saw the decedent again in November of 1977 and believed her still to be in stable mental health.

On June 11, the decedent met with her attorney, Franklin Klein, for the purpose of preparing a new will. He had known the decedent for several years and had made two prior wills for her in 1975 and 1976. He testified that the decedent directed him to put in the 1977 will that she had previously made gifts to the plaintiff and felt that the plaintiff was in excellent financial condition because she had a wealthy husband. He was of the opinion that the decedent was of sound mind and memory sufficient to be able to engage in legal matters.

In his findings, the trial judge expressed his belief that in 1977 the decedent knew what she wanted to do. He specifically referred to the testimony of Rayson and Klein and the will executed in June 1977 as support for his finding.

The law requires that the relationship must be established by proof "so strong, unequivocal and unmistakable as to lead to but one conclusion." (*Chicago Land Clearance Comm'n v. Yablong* (1960), 20 Ill. 2d 204, 207, 170 N.E.2d 145.) The trial court here was not persuaded that the existence of a fiduciary relationship between the defendant and her mother was clearly, convincingly, and unmistakably shown by the evidence. We are satisfied that the decision of the trial court on this point was not against the manifest eight of the evidence.

See *Clow v. Chicago Title & Trust Co.* (1972), 9 Ill. App. 3d 168, 292 N.E.2d 44.

 █ Turning now to the March 20, 1979, trust, we note again that some evidence supported the plaintiff's position. The defendant admitted that her mother was getting senile near the end of 1978 and that at times her memory was bad. It was the defendant who called the bank and told them her mother wanted a new trust created with the defendant as sole beneficiary. She admitted that during that period her mother was "not really" capable of making her own decisions; but, on the date of the execution of the last trust, she was so capable. The defendant petitioned to have her mother adjudicated unable to care for herself only 4½ months after the last trust agreement was executed.

Again, however, there is evidence favorable to the defendant's position. The March 20, 1979, trust, which made the defendant the sole beneficiary, was signed by two employees of the bank. Neither of them was called to testify. Dr. Otto testified that he examined the decedent in June of 1979 when she came for a chest X ray. She knew the family member who brought her and appeared to be aware of her surroundings. He did not detect anything unusual about her mental condition or the influence of anyone over her.

The court's determination that the decedent was competent when she executed the will on June 11, 1977, is probative of her condition at the time she executed the trust in March 1979, because the disposition of the property under the trust was, in effect, the same disposition of the property under the will.

The weight of the evidence that the defendant petitioned 4½ months after the last trust to have her mother adjudicated an incompetent falls on both sides of the scale. Countering the argument advanced by the plaintiff, it may be fairly argued that scheming, manipulative fiduciaries do not often, if ever, seek the intercession of a court.

The plaintiff attaches great significance to the fact that the defendant testified that her mother trusted her and that she gave her mother a high degree of care. We do not share the plaintiffs view of this testimony. Mutual respect, confidence and trust between parent and child, and care for an aging parent by a child, are to be fostered and admired, not looked upon with suspicion; nor do they give rise to a presumption of a fiduciary relationship. (*Wesemann v. Fischer* (1944), 323 Ill. App. 617, 56 N.E.2d 656.) Unequal disposition of property between children is not necessarily evidence of undue influence by one more favored in the disposition, nor an indication of less affec-

tion for those less favored. Moreover, the reason expressed by the decedent in her will for omitting the plaintiff from any right to the subject property was a natural one.

In this regard, we note that both the plaintiff and defendant lived near the decedent. The defendant went to live with her mother "off and on" after her mother's condition deteriorated. The plaintiff, on the other hand, never visited or spoke to her mother for 2½ years from the time the trust was executed in May 1977 until her mother was put in a nursing home in 1979. She testified that during that period she saw her mother once, walking in her own gravel driveway, picking up stones and looking at them and throwing them away, and yet she did not stop to speak to her mother. She explained that she did not call her mother or come to see her because the defendant told her that she could not "control" their mother after the plaintiff's visits. That testimony was denied by the defendant. The plaintiff's conduct was unnatural and the explanation unpersuasive.

What prompted Louise Rothenberg to dispose of her property as she did is subject now only to our conjecture. If it was done because of affection for the defendant or advice or persuasion, or even argument, by the defendant, the disposition that the decedent made should not be set aside by the court unless we can say there was undue influence exerted by the defendant. (*Ropacki v. Ropacki* (1930), 341 Ill. 301, 173 N.E. 376.) The trial judge held that the evidence failed to convince him that the decedent did not know what she was doing when she provided for disposition of her property. It would be improper for us to substitute our judgment for his.

The cases cited by the plaintiff, *Crawford v. Krebs* (1976), 40 Ill. App. 3d 568, 352 N.E.2d 76, and *Mitchell v. Van Scoyk* (1953), 1 Ill. 2d 160, 115 N.E.2d 226, are not in point. Not only are they factually inapposite, but, more importantly, they are both affirmances of findings of a fiduciary relationship by the trial court.

■ The plaintiff alternatively contends that she should be granted a new trial because the trial court denied her motion for leave to examine certain medical records contained in the court file of the guardianship proceedings. The motion was called to the court's attention after the case had been called for trial. The court's ruling was that the motion was not timely.

On October 9, 1986, the defendant filed a motion to close discovery. On October 12, the court ordered all discovery completed by April 1, 1987. On October 14, the defendant filed interrogatories under Rule 220 (107 Ill. 2d R. 220) seeking the name of any expert witness. The plaintiff answered on October 29 that she had no expert as of

that date and the investigation continued. A pretrial conference had been conducted, and the case was called for trial on July 14, 1987.

The plaintiff argues that there was no indication that she "would attempt to put anything into evidence arising from an inspection of the report." She also argues that she would not have asked for a continuance. She says she was "only seeking review of the medical report to ascertain the identity of the doctor involved, what his opinion was and what period of time the report covered." If she was not going to attempt to put anything into evidence arising from an inspection of the report, the only reason the plaintiff should have examined the report was a possibility the information in the report might have led to the discovery of some other admissible evidence. That, in turn, would have entitled the defendant to further discovery and require a continuance. The only explanation for making the motion on the day of trial given by the plaintiff was that she tried to get the evidence one week before but was prevented from doing so because of local rules.

In his ruling, the trial judge said that there were reasons why such reports were impounded and pointed out the interests of the family of the person over whom the guardianship had been established. He invited the plaintiff to show him, if she could, why the report should be made available, but that he felt that the motion was not timely.

We believe the record establishes that the trial judge considered all pertinent factors. The rules provide the court with discretion (87 Ill. 2d Rules 201(c)(1), (f)), and we find no abuse of discretion in the ruling.

For these reasons the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN, P.J., and BILANDIC, J., concur.