Estelle Floyd, Appellee, v. Estate of Jacob T. Smith, Appellant.

Opinion filed July 20, 1943.

A. W. STOLTZ and BEN H. TOWNSEND, both of Mt. Carmel, for appellant.

Fred W. Gee, of Lawrenceville, for appellee.

Mr. Presiding Justice Culbertson delivered the opinion of the court.

This is an appeal from a judgment of $3,120, rendered in the circuit court of Wabash county, in favor of Estelle Floyd, claimant appellee (hereinafter called claimant), and against the Estate of Jacob T. Smith, defendant appellant (hereinafter called defendant).

This case was tried before the court, without the intervention of a jury, and the court entered judgment, in favor of claimant, for $3,120 and costs, and ordered same to be paid in due course of administration.

The errors relied upon for reversal of this judgment may be fairly summarized by saying that it is contended that the court committed error in not dismissing the claim of appellee, and that he erred in rendering judgment in favor of appellee for any amount whatsoever, and that the judgment of the court is not supported by the evidence, and is contrary to the law.

At the very inception of defendant's contentions that this judgment should be reversed our attention is directed to the fact that claims against estates of deceased persons should be scrutinized with care and not be permitted to prevail except upon clear proof. We are aware of this provision of the law and recognize that before an allowance can be made of a claim for services to the decedent it is essential that either an express or an implied contract or obligation on the part of the decedent be established by a preponderance of the evidence (*McAuley v. O'Connor*, 92 Ill. App. 592), and, under the law, the burden of proving a contract or obligation against the estate of decedent is upon the claimant (*In re Estate of Teehan*, 287 Ill. App. 58).

Having regard to the well-established law as heretofore set forth we now address ourselves to a consideration of the evidence as same was developed in support of and in opposition to the allowance of the claim that furnishes the basis for the judgment appealed from in this case. From the evidence in this case it appears that claimant was 20 years of age, and that the decedent, Jacob T. Smith, was 59 years of age. Mr. Smith was a man of considerable wealth, owning a number of farms, city properties, oil income, and much personal property. The claimant had no property. Prior to October 1934, Mr. Smith resided in Mt. Carmel, Illinois, and claimant resided in Marion, Illinois. The evidence discloses that claimant had a sister, Mrs. Lechner, who resided in Mt. Carmel, Illinois. In the summer of 1934, claimant became acquainted with Mr. Smith (who was then a divorced man), and he suggested to her that she come to Mt. Carmel and become his housekeeper, to cook his meals, do his washing, and care for him. The evidence shows that he stated to her at that time if she would take care of him during the remainder of his lifetime, he would see that she was well taken care of. The evidence shows Mr. Smith was afflicted with cancerous sores, which became increasingly worse until his death in July of 1940. In October of 1934 claimant came to Mt. Carmel and began to work for Mr. Smith, and continued to work for him until the time of his death. The evidence discloses she cooked his meals, did his washing, and administered to his health and comfort in alleviating, so far as she was able, the pain resulting from his cancers.

The evidence is clear and distinct concerning the work performed by claimant for the deceased. In fact, there is no dispute anywhere in the record concerning the fact that she did perform the services on his behalf, nor is there any dispute but that such services were thoroughly satisfactory to the decedent,

and that satisfaction found expression by him on many occasions to several of his friends and acquaintances, to whom he indicated claimant had taken care of him just as well as if he had been in a hospital, and that she was a good cook. During the entire time claimant kept house for Mr. Smith she kept these cancerous ulcers cleansed and dressed, according to the physician's directions, and the evidence discloses that the changing of dressings was frequent, and as the cancers progressed they became larger and more numerous, secreting more discharge and therefore requiring more frequent cleansing and dressing. In later years they became very painful and it was necessary to dress them hourly with applications to relieve pain. The evidence shows that the discharge from these ulcers would get upon the bed clothing, which claimant kept washed and ironed. During the entire time she kept house for him no other person undertook such services. The attention rendered was constant.

The evidence further discloses that the claimant in this case was not in any way related to Mr. Smith, and the evidence is quite clear and distinct that he promised her if she would take care of him during his lifetime he would take care of her, and on many occasions during the six years of her service he repeatedly told his friends that he intended to make ample provision for her upon the event of his death. When claimant first came to Mt. Carmel she occupied an apartment on Main street where she performed the services for the deceased, and this continued until sometime in 1937, when Mr. Smith purchased a five-room house at another place in Mt. Carmel. The deed to this property was made to Mr. Smith, and there is some evidence in the record that Mr. Smith told the claimant the property would belong to her after his death. There is also other evidence that he told claimant he was arranging some

other financial matters in a way that would be a pecuniary benefit to the claimant herein.

Various witnesses were called to give evidence, both for the claimant and for the estate, as to the fair, reasonable and customary compensation paid for services such as were rendered by the claimant to the decedent. It appears from the evidence that the decedent discussed with the claimant, in the presence of her married sister (Mrs. Lechner) her coming to Mt. Carmel to keep house for him, and that he stated at that time that he was sick, didn't feel well, was tired of eating at restaurants, and wanted someone to keep house, cook his meals, do the washing, and look after him. He stated that at his death she would be well taken care of for it.

This is not a suit in equity by the claimant to enforce specific performance of a promise, agreement, or contract, by a deceased person to vest such claimant with property by way of a gift to take effect at death. This is a claim against an estate for services rendered and stands upon an entirely different footing than a suit for specific performance of an agreement to make a gift of property in consideration of services. To have specific performance by such an action in equity a plaintiff must prove the services were rendered under an express contract and the contract must appear by clear and convincing proof. But where the plaintiff, or claimant, is of no kin to the deceased and is seeking to recover for services rendered by way of a claim filed against the estate, it is not necessary to prove the services were rendered under an express contract. Recovery may be had upon an implied contract (*Moreen v. Estate of Carlson*, 365 Ill. 482, 493).

It seems to us, and we so hold, that the claim in this case is not based upon a promise to make a gift for the services rendered, and that same need not be proven by an express contract. It is a claim that can

be established by an implied contract. Where no kin or family relationship exists between the parties, and one accepts and retains the beneficial results of another's services, which were rendered at his own insistence and request and which he had no reason to suppose were gratuitous, the law will imply liability for such services in such an amount as they are reasonably worth. The evidence in this case discloses that the claimant is of no kin to Mr. Smith, and that they were not acquainted with each other prior to her visit to her sister in Mt. Carmel, and we do not believe the relationship of the parties would give rise to any implication that Mr. Smith would expect the claimant, a stranger, to come from Marion to Mt. Carmel and assume the duties, which she did, without the expectation of being paid therefor. There is nothing in this evidence that when fairly considered, would permit us to conclude therefrom that Mr. Smith did not intend to pay and the claimant, on the other hand, did not expect to receive pay. Under such circumstances, the law implies an obligation to pay. The testimony of claimant's sister, who was present at some of the discussions and conversations between claimant and Mr. Smith prior to claimant's coming to work for Mr. Smith, tends to prove that Mr. Smith intended to pay for such services, and this has further corroboration in the testimony of several disinterested witnesses with whom Mr. Smith discussed claimant being in his home, and that testimony, to our minds, discloses an intent on his part that claimant should be paid.

It is contended in this court the evidence discloses an ability of Mr. Smith to pay his bills and a promptness on his part in paying bills, and it is urged that we should adopt, in denying claimant's claim, the view that claimant had been paid for her services. We find nothing in this record which indicates in any way that claimant had been paid, and while the decedent may

have had a fine record and been abundantly able to discharge indebtedness incurred by him as same accrued, it does not appear that he paid claimant and that is the only matter with which we are concerned on this appeal.

Some stress is laid upon the fact that claimant's small child was with her and that he was afforded a living in the home by the decedent. We are not disposed to defeat, or in any way reduce claimant's judgment on that account, and if Mr. Smith in his lifetime, manifested some interest in this child and the child was the recipient of some financial assistance from Mr. Smith, we are not disposed in any way to reduce the amount due to the claimant in this case on that account.

A fair and candid consideration of all the evidence in this case brings us to the inescapable conclusion that the judgment in this case is just and proper and has abundant support in the evidence. This case was tried before the court, without a jury, and as a court of review, we will not substitute our findings of fact for the findings of fact of the trial court, unless the judgment is clearly against the manifest weight of the evidence (*Chamblin v. New York Life Ins. Co.*, 292 Ill. App. 532) ; and as a reviewing court, we will accept the findings of the trial judge upon questions of fact, based upon the statements of witnesses whom he saw and heard testify, unless such findings are clearly and palpably erroneous (*Kinnah v. Kinnah*, 184 Ill. 284).

We find that the judgment of the court is not against the manifest weight of the evidence, and that his findings are not clearly and palpably erroneous, but that such findings of fact are in harmony with the weight of the evidence, and not in any way erroneous.

The judgment of the trial court, being correct, is hereby affirmed.

*Judgment affirmed.*