In the Matter of the Estate of James Mallas, Deceased.
Celia Stolpe, Claimant-Appellant, v. Thomas N. Kazakos,
Executor of the Estate of James Mallas, Deceased,
Defendant-Appellee.

Gen. No. 52,365.

First District, Third Division.

October 3, 1968.

Sidley & Austin, of Chicago (Alice M. Bright, George M. McBurney, Arthur F. Staubitz, and Sylvia O. Decker, of counsel), for appellant.

Arthur S. Gomberg, Samuel Nineberg, and Alexander O. Walter, of Chicago (Samuel Nineberg, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

Celia Stolpe filed a claim for $6,451.10 against the estate of James Mallas for personal and housekeeping services rendered to the decedent and to his wife who preceded him in death. Mrs. Stolpe, a nonrelative, alleged that she performed the services on a daily basis at the request of the decedent or his wife from December 1961 (beginning with the illness of Mrs. Mallas and continuing through her death in September 1963) until March 1964. From March 1964 until December 1964, she claimed that she performed the work about three or four days a week and thereafter on approximately ten occasions until the hospitalization of the decedent in August 1965. No answer to the claim was filed by the estate. After hearing evidence, the trial court entered an order denying the claim. The claimant then moved the court to reverse its order and to enter a judgment for her. The motion was denied and she appealed.

At the hearing, in his opening statement, her attorney informed the court that she did not seek to recover on a direct promise by either of the Mallases but on an implied contract for the value of her services. The claimant presented four witnesses: two friends of the Mallases who had known them over 40 years; a niece of Mrs. Mallas, and a sister of the claimant who also had known the Mallases about 40 years. The witnesses testified that after Mrs. Mallas became ill, they saw Mrs. Stolpe at the Mallas home cleaning house, cooking food, changing linen, assisting Mrs. Mallas (who was helpless and bedridden), bathing her, changing her clothes, shopping for groceries

89

and medicine and taking clothes to launder. Mrs. Stolpe's sister said that she took her to the Mallas home practically every day, while the others told of seeing her perform these services two to three weekday afternoons, Sunday afternoons and sometimes in the evening. Two of the witnesses also testified that after the death of Mrs. Mallas, they saw Mrs. Stolpe bring food, cook food, change bed linen and clean house for James Mallas. The performance of the latter services was seen a dozen afternoons by one witness who visited the Mallas home once a week, and quite a number of times—perhaps every time—by another who visited two to three evenings a week.

None of the services or expenditures were paid for by the Mallases, except that Mrs. Mallas gave Mrs. Stolpe $25 a week which she received from her husband. The money was used to purchase food. Despite the lack of payment, the Mallases were appreciative of the efforts of Mrs. Stolpe. All of the witnesses testified to conversations in which Mallas and Mrs. Mallas expressed their gratitude or intention to pay the claimant. Two of the witnesses related conversations at which Mrs. Stolpe was present. In one conversation, Mrs. Mallas said that she would "rot in this bed" if it weren't for Mrs. Stolpe; in two others, Mallas said, "I will repay her" and "I'll take care of her." Two of the witnesses related conversations outside of the presence of Mrs. Stolpe where Mrs. Mallas said to her husband, "She must be paid" and "We have to take care of them" [Mrs. Stolpe and her sister] and he responded, "We have to . . ." and "Yes we do." After one of these conversations, Mrs. Mallas' niece told Mrs. Stolpe to continue working because she would be paid for it.

There was also testimony of an attempt to repay the claimant by means of a devise in a will. A will was prepared leaving the Mallas home to Mrs. Stolpe and her sister. According to the sister, the will was never execut-

ed because Mallas was ill on the day scheduled for the signing, because Mrs. Stolpe could not accompany him to the appointed place on a later day and because thereafter arranging a time to meet the attorney was too much trouble. However, the witness did not correct the attorney who cross-examined her when he incorporated in a question the statement that Mallas refused to sign the will.

Mrs. Stolpe, the only witness presented by the estate, was called as an adverse witness. She testified that Mallas never offered or promised to pay for the food she bought or the services she rendered, and that she had said in a deposition that he never told her or anyone else that he would reimburse her. She also acknowledged that she did not ask him for payment or reimbursement, although she did give him some bills for groceries which were never paid. She testified, however, that she expected to be paid and that she heard Mallas tell one of her witnesses that he would take care of her. She admitted that he never told her this directly except in one conversation at which no one else was present. She stated that he had not asked her to shop, cook or clean house but that Mrs. Mallas had, and that on occasion Mallas would indicate to her that there was no food—that the refrigerator was empty.

After listening to the testimony, the court stated that it had no doubt that the claimant rendered extensive services to the decedent and his wife over a considerable period of time. The court believed that the claimant should be compensated on a moral basis "even beyond what she is requesting" but refused to allow the claim on a legal basis because it believed that its hands were "tied by the law." The court noted that the lack of an express contract had been admitted and stated that the presumption of an implied contract (to pay for services where there is no relationship between the parties) would not arise because there was "positive testimony by the claimant herself, that there never was, at any time, any

91

. . . agreement to pay, either during the lifetime of his wife, or after her death."

On the motion to vacate the order denying the claim the court reaffirmed its ruling but did so on the ground that the presumption of an implied contract had been overcome by the claimant's own testimony that Mallas had not promised or offered to pay or reimburse her and that she had not asked him for payment or told him of her expectation of payment.

 We disagree with the court's decision and with the two reasons upon which it was predicated. First, a claim for services must be based on either an express or implied contract. The claimant did not contend that there was an express contract. The lack of an explicit agreement to pay her did not preclude the existence of an implied contract to pay for those services known to and accepted by the decedent. Her testimony that she had no definite understanding with the decedent did not negate her contention that an agreement was implied by their acts, expressions and conduct. Second, her testimony did not destroy the presumption arising from the acceptance of her services. She was not related to either Mallas or his wife. A contract will be implied in the following situation:

> "Where no kin or family relationship exists between the parties, and one accepts and retains the beneficial results of another's services, which were rendered at his own insistence and request and which he had no reason to suppose were gratuitous, the law will imply liability for such services in such an amount as they are reasonably worth." Floyd v. Smith's Estate, 320 Ill App 171, 50 NE2d 254 (1943), cited in In re Estate of McWain, 77 Ill App2d 359, 222 NE2d 576 (1966) and In re Estate of Brumshagen, 27 Ill App2d 14, 169 NE2d 112 (1960).

All of the elements of such a contract were proved in the present case. This was recognized in part by the trial court although it incorrectly concluded that the proven facts merely created a moral obligation on the part of the estate.

The estate contends that Mallas did not request a substantial share of the services—that many were requested by his wife for herself and for him. Mallas is liable for these since they were necessary services. In addition, he is liable for the services requested by himself or which he knowingly accepted after his wife's death. The estate also contends that the services were rendered gratuitously. In support of this, it cites the failure of Mrs. Stolpe's sister, who rendered services for which the Mallases expressed their gratitude, to file a claim against the estate. Not filing a claim is understandable in view of her testimony that Mrs. Stolpe did "all the work." The estate further cites in support of this contention the admission of Mrs. Stolpe that Mallas did not tell her or anyone else that he would reimburse or repay her. This admission in itself does not show that her services were given or received gratuitously. She may still have expected payment and Mallas may still have expected to pay.

The claimant established an implied contract for reimbursement of the expenditures she made on the Mallases' behalf and for compensation for the services rendered to them. The amount of her expenditures and the value of her services were not determined because of the trial court's decision denying liability. Accordingly, the case will be reversed and remanded with directions to conclude the hearing on the claim and to enter a judgment for its reasonable value.

Reversed and remanded with directions.

SCHWARTZ and SULLIVAN, JJ., concur.