DELORES E. IDLEMAN *et al.*, Plaintiffs-Appellants, v. REATHA I. RAY-MER *et al.*, Defendants-Appellees.

Fourth District   No. 4—88—0725

Opinion filed May 25, 1989.

Dale A. Cini, of Ryan, Cini & Bennett, of Mattoon, and Bobby F. Sanders, of Toledo, for appellants.

David Y. Eberspacher, of Harlan Heller, Ltd., of Mattoon, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On November 24, 1984, plaintiffs Delores E. Idleman, Joann Boley, and Carol Van Scyoc, executor of the estate of Lela Van Scyoc, deceased, brought suit in the circuit court of Cumberland County against defendants Reatha I. and Roy G. Raymer seeking to set aside a deed dated August 14, 1976, by which Wesley Miller, deceased, had conveyed to defendants, who were wife and husband, an interest with him as joint tenants in his only real estate, a 200-acre tract of farmland. Plaintiffs Carol Van Scyoc, Delores Idleman, and Joann Boley and defendant Reatha I. Raymer were the only children of Wesley Miller. Under the terms of his will, executed August 10, 1974, which had been admitted to probate, defendant Reatha I. Raymer would have received a two-fifths interest in the tract, and the other three daughters would each have taken a one-fifth share. Plaintiffs contended the conveyance had been obtained by defendants in breach of their fiduciary relationship with Miller.

After a bench trial, the court entered an order on September 6, 1988, finding in favor of defendants. Plaintiffs have appealed, contending: (1) the decision was contrary to the manifest weight of the evidence; and (2) the court erred in evidentiary rulings, the most serious of which concerned the application of the Dead Man's Act (Ill. Rev.

Stat. 1985, ch. 110, par. 8—201). We conclude the evidence supported the court's decision, and no reversible error resulted from the court's evidentiary rulings. Thus, we affirm.

The following facts were not seriously disputed. Wesley Miller died on July 30, 1984, less than one month short of his 82nd birthday. His wife had predeceased him some 10 years earlier. Forty days after her death he executed his previously described will. Prior to the execution of the deed which is the subject matter of this suit, Miller had granted Reatha Raymer his general power of attorney on March 12, 1975. Defendants lived in a two-bedroom home which was about two miles from the Miller farmland. Apparently, when Miller's wife died, defendants converted an enclosed porch in their home into a bedroom with stool and lavatory for Miller, and he came to live with them. Defendant Roy Raymer farmed the 200-acre tract during the time Miller lived with defendants. Reatha Raymer cared for her father, gave him insulin shots, kept him clean and, on occasion, took him to see his physician. Defendants do not dispute a fiduciary relationship between Miller and defendants existed at the time of the conveyance. This situation was further complicated because the same firm of attorneys who drafted Miller's will and the deed setting up the joint tenancy also represented defendants.

Although plaintiffs do not contend Miller lacked capacity to make the questioned deed, Miller's mental condition bears upon his susceptibility to influence which might have been imposed upon him through use of the fiduciary relationship. Miller's physician testified that, at the time of execution of the deed, Miller did suffer from diabetes and early evidence of Parkinson's disease, but his mind was then sound. However, by 1978, Miller had been hospitalized for a progressive disease which would eventually cause memory loss. The notes of Miller's physician indicated the physician considered Miller had exhibited poor judgment for the previous five to six years, a period of time starting long before the execution of the deed. The physician's notes also indicated Miller had been hospitalized twice in 1975 and had shown some deterioration of his ability to think during this period of time. Nevertheless, the physician stated a definite opinion Miller was capable of transacting business at the time the deed was executed. Miller's banker also testified to Miller's competency when the deed was executed. Various other persons who had a relationship with defendants, such as would likely make them feel favorably toward defendants, also testified Miller appeared competent in 1976.

Some of the same witnesses who testified as to Miller's competency also testified Miller had spoken to them indicating much grati-

tude for what defendants had done for him. One such witness, whom Miller had visited in Florida in December 1976, testified Miller told her he was giving defendants and their daughter all of his property because only they had treated him properly. The widow of the deceased lawyer who had drafted the papers effectuating the joint tenancy between Miller and defendants testified she shared an office with her husband at that time and was present during various visits concerning the transaction. She stated Miller came to the office and told them he wanted to make a deed to defendants because of their kindness to him. According to the witness, her husband reminded Miller he had other children, but Miller said he wanted defendants to have the property and had agreed with them that they could have the property as a reward for caring for him in the past and continuing to do so in the future. This witness further testified her husband made Miller think about the transaction and return several times before consummating the transaction. The witness admitted her son was attorney for defendant Roy Raymer.

Plaintiffs' evidence indicated defendants had been secretive about the transaction setting up the joint tenancy. Testimony of plaintiffs Delores Idleman and Joann Boley that the execution of the deed was never disclosed to them until after their father's death was not refuted by defendants. Financial statements given by defendant Roy Raymer to his bank appeared to fail to indicate defendants claimed any interest in the 200 acres beyond his rights as a tenant. Plaintiffs also point out defendant Reatha Raymer was named as executor in Miller's will, and defendant Roy Raymer shared a lock box with Miller, but they did not present his will for probate until four months after his death.

Based upon the evidence presented, we do not find the decision of the circuit court to be contrary to the manifest weight of the evidence. In reaching that decision, the court properly applied the formula set forth in *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872. Defendants do not dispute that the existence of the fiduciary relationship between them and Miller gave rise to a presumption that the transaction in which they obtained the joint interest in the 200-acre tract was fraudulent. The *Franciscan Sisters* court held that such a presumption was subject to the Thayer "bursting bubble" theory. Under this rule, once the existence of the presumption is established, the burden of going forward is on the party against whom the presumption operates to produce evidence to negate the presumption. If that is done, the presumption ceases to exist, and the proponent of the theory of fraud has the burden of proving the fraud.

The most difficult aspect of the operation of the "bursting bubble" theory of presumptions in civil cases is the question of the quantum of evidence necessary to negate the presumption. The *Franciscan Sisters* opinion stated that, because there is no "fixed rule," at times the amount of evidence necessary may be small but at other times it may be "substantial." (*Franciscan Sisters*, 95 Ill. 2d at 463, 448 N.E.2d at 877.) Because the alleged perpetrator of the fraud there was a lawyer and the alleged victim a client, that court held under those circumstances the presumption could only be rebutted by evidence which was "clear and convincing." (*Franciscan Sisters*, 95 Ill. 2d at 465, 448 N.E.2d at 878.) Here, the circuit court applied the "clear and convincing" standard and found the presumption had been rebutted.

█ The instant defendants were not lawyers. Plaintiffs note that in *Lamb v. Lamb* (1984), 124 Ill. App. 3d 687, 694, 464 N.E.2d 873, 878, this court stated *Franciscan Sisters* seemed to indicate the clear and convincing standard was also applicable when the alleged perpetrator of the fraud was not a lawyer. Plaintiffs also point out that in this case the law firm involved in the questioned transaction had represented both Miller and the defendants. We need not decide the quantum of proof necessary in these circumstances, for the circuit court here applied the clear and convincing standard, which is the highest proof required in a civil case. The determination of whether the presumption had been rebutted was a factual determination which we, as a court of review, can overturn only if the determination is contrary to the manifest weight of the evidence. *Klaskin v. Klepak* (1989), 126 Ill. 2d 376, 396, 534 N.E.2d 971, 979.

Substantial evidence supports the circuit court's decision that the presumption of fraud had been rebutted. Miller had made a will, shortly after his wife's death in 1974, which gave three-fifths of the 200-acre tract to his other daughters. However, that will was drafted approximately the time he moved in with defendants. The transaction in dispute occurred two years later. All of the evidence indicates the defendants had treated him well. He was likely grateful to defendants, and various testimony indicates this was so. Some other testimony indicated he felt his other daughters had not treated him as well. The wife of the lawyer who drafted the deed creating the joint tenancy testified to being present during several conferences between Miller and her husband concerning that transaction. Her testimony indicated defendant entered into the transaction only after due deliberation. Miller's physician testified Miller was capable of transacting business at that time. This opinion was corroborated by the testimony of lay witnesses. While most of the witnesses who testified to the foregoing

matters were persons likely to be biased in favor of defendants, the extent to which that lessened the weight to be given their testimony was for the trial court, sitting as the trier of fact, to determine.

Plaintiffs call our attention to the evidence of Miller's limited education, lack of having done much reading, failing health and sporadic mental confusion near the time of the questioned transaction. However, these were all factors for the trier of fact to weigh against the evidence favorable to defendants. Plaintiffs also express concern because the firm representing Miller had also represented defendants. While this may bear upon the strength of the fiduciary relationship and the strength of the evidence necessary to rebut the presumption of fraud, that evidence is not conclusive if Miller's entry into the transaction was a free, voluntary, and understanding act. Likewise, defendants' attempts to hide the fact the joint tenancy had been set up are, at most, an indication they had some feelings of guilt in regard to the transaction. The main issue is the mental state of Miller at the time the joint tenancy was set up and not the mental state of the defendants.

The circuit court's determination that the presumption of fraud had been rebutted was not contrary to the manifest weight of the evidence. The evidence on that issue was also strong enough to support the ultimate decision of the court to refuse to set aside the conveyance to defendants. That decision was also not contrary to the manifest weight of the evidence.

We now turn to the circuit court's rulings on evidence. As indicated, we deem the most important question raised in this regard to concern portions of the testimony of defendant Reatha Raymer offered by the defense and admitted over the objection of plaintiffs upon the grounds the testimony violated the Dead Man's Act.

The Dead Man's Act is contained in article VIII, part 2 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 8—201). Section 8—201 of the Dead Man's Act provides that, in any civil action in which a party is suing or defending as "the representative of a deceased person," no "adverse party or person directly interested" in the suit can properly "testify on his or her own behalf" to any conversation with the deceased or any event occurring in the presence of the deceased. (Ill. Rev. Stat. 1987, ch. 110, par. 8—201.) Section 8—201 further defines the term "[r]epresentative" to include heirs or legatees but makes no express statement that persons, such as plaintiffs here who are devisees, are included within the definition of a representative. This could be significant here because, although plaintiffs are both heirs and devisees, the record does not indicate Miller's will has

been set aside. Thus, plaintiffs are suing as devisees.

■■ Prior to the incorporation of the provisions of the Dead Man's Act into the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 8—201), similar legislation existed in "An Act in regard to evidence and depositions," section 2 of which indicated devisees together with heirs, legatees and certain others, came within the definition of a "[r]epresentative." (Ill. Rev. Stat. 1981, ch. 51, par. 2.) We conclude the word "devisee" was left out of section 8—201 of the Code by oversight. This would conform to the authoritative textual statement that a devisee of the decedent is included within the prohibitions of the Dead Man's Act. M. Graham, Cleary & Graham's Handbook of Illinois Evidence §606.5, at 306 (4th ed. 1984).

■■ Defendants do not dispute that plaintiffs qualify as representatives. Rather, they contend the questioned testimony came within the exception set forth in section 8—201(a) of the Dead Man's Act, which states:

> "If any person testifies on behalf of the representative to any conversation with the deceased *** or to any event which took place in the presence of the deceased ***, any adverse party or interested person, if otherwise competent, may testify concerning *the same conversation or event.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 110, par. 8—201(a).)

Plaintiffs' brief lists the places in the report of proceedings where testimony of Reatha Raymer was admitted over objections based on the Dead Man's Act. The vast majority of this testimony concerns taking her father to see his physician. The physician's testimony was before the court because plaintiffs had introduced into evidence an evidence deposition containing the physician's testimony. This deposition had been taken by defendants. However, by offering it into evidence, plaintiffs made the physician their witness and, to the extent Reatha Raymer's testimony concerned a conversation or event about which the physician testified, the exception of section 8—201(a) made her testimony admissible.

■■ Reatha Raymer was permitted to testify that, when she took her father to see his physician on July 17, 1976, he asked the physician as to whether "he was capable of making papers," and the physician responded by saying "yes." The physician had merely testified this visit occurred. If this testimony by the physician of the happening of the event of the visit was not sufficient to permit the recitation of the conversation during the event, any error was not reversible. The physician himself had testified he deemed Miller to have been competent to transact business at that time. Reatha Raymer was also permitted,

over objection, to testify in regard to her father's capacity to read and make phone calls. However, several plaintiffs had also testified in regard to the father's capacities in these respects.

■■ Hearsay objections were properly overruled regarding testimony of various defense witnesses as to conversations they had with Miller. Very little of the testimony was offered to prove the truth of the matters asserted. Accordingly, no hearsay issue was involved. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §801.1, at 504 (4th ed. 1984).) A possible exception to the foregoing was the testimony of several witnesses who described how Miller told them, in various ways, that he had or would make arrangements concerning his property to favor his daughter Reatha. As evidence was also introduced in regard to the transaction whereby defendants became joint tenants with Miller as to the 200-acre tract, this evidence tended to show Miller knew what he was doing and, to the extent the evidence was hearsay, it was an admission against his economic interest because his economic interest would have been served by having the conveyance set aside.

As we have indicated, we affirm.

Affirmed.

LUND and KNECHT, JJ., concur.