*In re* ESTATE OF THORNTON R.L. SEWART, Deceased (Irene B. Popham, Indiv. and as Independent Adm'r of the Estate of Edward J. Popham, Deceased, Plaintiff-Appellant, v. Virginia Taff, Indiv. and as Independent Adm'r With the Will Annexed of the Estate of Thornton R.L. Sewart, Deceased, *et al.*, Defendants-Appellees (The Salvation Army *et al.*, Defendants)).

First District (5th Division)   No. 1—93—2618

Opinion filed June 23, 1995.—Rehearing denied July 21, 1995.

Bruce C. Davidson, of Chicago, for appellant.

Henry Thrush Synek and Richard H. Synek, both of Chicago, and Mark S. Smith, of Engelman & Smith, of Skokie, for appellees.

JUSTICE GORDON delivered the opinion of the court:

This is the second appeal taken by the plaintiff, Irene Popham, individually and as administrator of the estate of her late husband, Edward J. Popham, concerning her two-count complaint for declaratory relief, naming as defendants, Virginia Taff, individually and as the administrator of the estate of Thornton R.L. Sewart; the beneficiaries under Sewart's will; and several other relatives of Sewart. In the earlier appeal, this court reversed the grant of summary judgment to the defendants on count I, which alleged the existence of an oral contract to make a will between the plaintiff, her husband and Sewart, and remanded the case for further proceedings on that count. (*In re Estate of Sewart* (1991), 236 Ill. App. 3d 1, 602 N.E.2d 1277.) There we held that, notwithstanding plaintiff's admissions in her deposition testimony, which precluded consideration of an express contract, an issue of fact remained as to whether those admissions precluded recovery under a theory of implied in fact contract for which purpose the matter was remanded for trial. The instant appeal is taken from the judgment entered in favor of the defendants after a bench trial pursuant to our remand.

In the instant appeal, the plaintiff contends that the trial court erred by denying plaintiff's motion to empanel a jury or, alternatively, for a change of venue; that the trial court erred in excluding certain evidence under the Dead-Man's Act (735 ILCS 5/8—201 (West 1992)); and that the trial court erred by entering judgment in favor of the defendants.

Before we review the testimony at trial, we first address plaintiff's argument that the trial court erroneously denied plaintiff's motion to empanel a jury or, alternatively, for a change of venue.[1] That motion was filed on April 27, 1993, 16 days after defendant Taff filed a waiver

---

[1]At oral argument, an attorney for several of the defendants argued that this issue was waived because the order denying plaintiff's motion was not specified in plaintiff's notice of appeal as required by Supreme Court Rule 303(c)(2) (134 Ill. 2d R. 303(c)(2) (notice "shall specify the judgment or part thereof appealed from and the relief sought from the reviewing court")). The notice of appeal, which is to be liberally construed, serves the purpose of

of her right to jury trial. In her motion, plaintiff argued that the case had proceeded and was prepared in anticipation of a jury trial and that the plaintiff was prejudiced by the defendant's "last-minute tactic" to waive a jury. Particular prejudice was alleged to have occurred because during pretrial conference, an *ex parte* communication occurred between one of the defendants' attorneys and the trial judge regarding Sewart's testamentary plan. The plaintiff contended that the communication was "potentially quite prejudicial (the Court has made reference to the discussion, though not its content, on at least two occasions)." On this basis, the plaintiff requested that the

---

informing the prevailing party in the trial court that the unsuccessful litigant seeks a review by a higher court. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380; see *Smock v. Hale* (1990), 197 Ill. App. 3d 732, 555 N.E.2d 74.) The briefs, not the notice of appeal itself, specify the precise points to be relied upon for reversal. (*Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 394 N.E.2d 380; *Lake County Trust Co. v. Two Bar B, Inc.* (1992), 238 Ill. App. 3d 589, 606 N.E.2d 258.) Thus, if the appellee is not prejudiced thereby, the absence of strict compliance with the form of the notice will not be fatal. (*In re Marriage of Betts* (1987), 159 Ill. App. 3d 327, 511 N.E.2d 732.) Moreover, as stated in *Burtell v. First Charter Service Corp.*, the court has jurisdiction to review a decree not designated in the notice of appeal where that decree is but " 'a step in the procedural progression leading' to the judgment." 76 Ill. 2d at 434-35, 394 N.E.2d at 384, quoting *Elfman Motors, Inc. v. Chrysler Corp.* (3d Cir. 1977), 567 F.2d 1252, 1254.

Plaintiff's notice of appeal in the instant case appealed from "a judgment of the Circuit Court of Cook County entered herein June 23, 1993 *** and from such other orders and rulings as may be relevant thereto." While such language does not strictly comply with Supreme Court Rule 303(c)(2), it is not fatal to our jurisdiction to review the trial court's denial of plaintiff's motion to empanel a jury or grant a change of venue. The appellees have not argued that they were prejudiced by the technical defect. Furthermore, they made no objection to the notice of appeal by way of motion or in their brief and, instead, argued in opposition to that issue. (Their objection was first raised at oral argument and, then, only in passing without case citation or support.) (See *In re Marriage of Betts*, 159 Ill. App. 3d 327, 511 N.E.2d 732.) Moreover, the trial court's order denying plaintiff's motion was interrelated to the judgment entered and was a step in the procedural progression leading to that judgment. Thus, in accordance with *Burtell*, we hold that the notice of appeal, while deficient, did not deprive this court of jurisdiction to consider the merits of this issue on appeal. See *Smock v. Hale*, 197 Ill. App. 3d 732, 555 N.E.2d 74 (unspecified orders disqualifying expert and closing schedule for discovery directly contributed to specified order granting summary judgment).

court, in its discretion, order a jury trial or, in the alternative, grant plaintiff a change of venue.

In response, the defendants moved to strike and dismiss the plaintiff's motion. While the trial court granted defendants' motion, the rationale for its ruling is not apparent from the record.

■ Initially, we note that the plaintiff has not supported her argument with case citation and is thus in violation of Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)). (See *Bank of Illinois v. Thweatt* (1994), 258 Ill. App. 3d 349, 630 N.E.2d 121 (issue waived when failure to argue or cite to authority).) In addition to this procedural shortcoming, plaintiff's argument also fails on its merits. As provided in section 2—1105 of the Code of Civil Procedure (735 ILCS 5/2—1105 (West 1992)), the plaintiff must file a jury demand at the time the action is commenced, and the defendant must file a jury demand at the time of filing an answer. The statute further provides that if the plaintiff subsequently waives the jury demand, the defendant can promptly demand a jury after being advised of the waiver. There is no provision that if a defendant files a jury demand and then waives it, the plaintiff shall be given the right to file a jury demand. *Schwartz v. Lake View Tool & Manufacturing Co.* (1955), 4 Ill. App. 2d 565, 124 N.E.2d 570.

As stated in *Stephens v. Kasten* (1943), 383 Ill. 127, 133, 48 N.E.2d 508, 511, "the need for a systematic order of procedure requires that there be regulation of the time when the right to a jury trial be requested." An untimely jury demand is not necessarily foreclosed, however, if good cause can be shown for the failure to comply with the statute. (*Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205; see 134 Ill. 2d R. 183; 735 ILCS 5/2—1007 (West 1992).) The determination of whether a party has shown good cause is discretionary with the trial court (see *Trapani v. Trapani* (1969), 109 Ill. App. 2d 202, 248 N.E.2d 294), and that determination will not be overturned absent an abuse of discretion. (*Greene v. City of Chicago*, 73 Ill. 2d 100, 382 N.E.2d 1205.) The test is not whether we, sitting as trial judges, would have allowed the motion, but whether the action of the trial court in denying the motion was a reasonable exercise of sound discretion. *Johnson v. Sabben* (1972), 7 Ill. App. 3d 238, 282 N.E.2d 476.

As stated above, the plaintiff's late jury demand, made in her motion to empanel a jury, argued that the plaintiff had been prejudiced by the defendant's late waiver because the plaintiff had prepared her case as a jury-trial matter based on the defendants' jury demand. The plaintiff further argued that the trial court had been privy to information discussed during pretrial, *ex parte* conferences and at hearings on pretrial motions.

The fact that a defendant waives his jury demand when the case is called for trial is not in and of itself sufficient to support a good-cause showing by the plaintiff. (*Schwartz v. Lake View Tool & Manufacturing Co.*, 4 Ill. App. 2d 565, 124 N.E.2d 570.) Similarly, allegations of prejudice resulting from pretrial conference discussions based on a belief that the case would be heard by a jury do not meet the good-cause-showing requirement. (*Gray v. Schottmiller* (1974), 18 Ill. App. 3d 812, 310 N.E.2d 750.) In *Gray*, a jury demand was originally filed by the defendant and the defendant withdrew that demand immediately prior to trial. As the court stated:

> "Beyond the fact that the plaintiff has not alleged actual prejudice but merely the possibility of prejudice, it has been held that the systematic order of procedure provided for jury demands *** will be applied unless the trial court, in its discretion and for good cause shown, allows the plaintiff additional time to file a jury demand ***. [Citation.] Plaintiff cites no cases to support her position and we feel the allegation that the plaintiff was somehow 'possibly' prejudiced when she participated in settlement negotiations in the belief that the case would be tried by a jury does not make the required showing of 'good cause' ***. [Citation.]" (18 Ill. App. 3d at 814-15.)

In accordance with *Schwartz* and *Gray*, the plaintiff in the instant case did not make the requisite showing of good cause. The plaintiff did not allege actual prejudice but "potential" prejudice based on speculative information that the trial judge may have been privy to during *ex parte* pretrial conferences. The trial judge reviewed the plaintiff's motion and allegations therein and granted defendants' motion to strike and dismiss that motion. This ruling was not an abuse of discretion.

■ For similar reasons, we reject plaintiff's argument that the trial court erred in denying her alternate request for change of venue. As with her jury demand issue, the plaintiff has not cited to any authority in support of her change of venue argument and thus has waived this issue on appeal. (*Bank of Illinois v. Thweatt*, 258 Ill. App. 3d 349, 630 N.E.2d 121; see 134 Ill. 2d R. 341(e)(7).) Furthermore, the plaintiff has not alleged or shown a personal bias by the judge which she was required to do since the judge had previously ruled on substantial issues in the case. (*In re Estate of Roselli* (1979), 70 Ill. App. 3d 116, 388 N.E.2d 87; *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union Local 1600* (1976), 42 Ill. App. 3d 1056, 356 N.E.2d 1089.) The purpose behind requiring a party to file its change of venue before the judge has rendered any decisions on substantial issues is to prevent counsel

from ascertaining whether a court is in agreement with its theory and, if it is not, to assert prejudice and seek a change in venue. (*McCormick v. McCormick* (1988), 180 Ill. App. 3d 184, 536 N.E.2d 419.) This potential abuse can extend to the pretrial conference stage where litigants also may attempt to test the disposition of the trial judge. See *In re Estate of Roselli*, 70 Ill. App. 3d 116, 388 N.E.2d 87.

A change of venue should be granted only in the sound discretion of the court. (*Adler Center for Behavior Modification, Inc. v. Chicago Title & Trust Co.* (1984), 129 Ill. App. 3d 1024, 473 N.E.2d 378.) As discussed, the plaintiff's allegations of prejudice in her motion for change of venue were of a general nature. These allegations were extremely speculative and merely identified a "potential" for prejudice. On appeal, the plaintiff has not cited to any specific comments made by the trial court that would substantiate her claim of prejudice. Instead the plaintiff states in her brief that "the Court *** had commented extensively on its views of the facts in the case, during summary judgment proceedings, and *** during a pre-trial conference *** had become privy to *ex parte* commentary by Defendants on certain evidentiary points." As stated in *McCormick v. McCormick* (180 Ill. App. 3d at 194, 536 N.E.2d at 425):

> "It is well established that a trial judge is presumed to be impartial [citation] and relies only on proper evidence in reaching a determination on the merits. [Citation.] The burden on overcoming this presumption rests on the party making the charge of prejudice."

We do not believe the plaintiff has sustained her burden and find that the trial court did not abuse its discretion in granting defendants' motion to strike and dismiss plaintiff's motion for change of venue.

We next address plaintiff's contentions that the trial judge erroneously applied the Dead-Man's Act to exclude certain evidence. The relevant section of that act provides as follows:

> "In the trial of any action in which any party sues or defends as the representative of a deceased person *** no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased person *** or to any event which took place in the presence of the deceased *** except as follows:
>
> (a) If any person testifies on behalf of the representative to any conversation with the deceased *** or to any event which took place in the presence of the deceased [person] *** any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event." (735 ILCS 5/8—201 (West 1992).)

Based on this provision, the plaintiff argues that the trial court erro-

neously failed to allow her to testify on redirect regarding the specifics of the relationship between her deceased husband, Thornton Sewart and herself. Plaintiff also argues that the trial court erred in denying her Dead-Man's Act objection to testimony from the attorney who represented defendant Taff in her individual capacity and as administrator of the estate of Thornton Sewart concerning his conversation with Sewart.

The plaintiff argued before the trial court and continues to argue on appeal that the defendants waived the Dead-Man's Act because of questions they posed to the plaintiff during their cross-examination of her. These questions centered around Thornton Sewart's activities after 1981; specifically, whether Sewart was able to walk, speak, write, talk on the telephone, do his own banking, and drive a car. The plaintiff was further questioned on cross-examination as to whether Sewart ate at restaurants; whether he cooked for himself; whether he was able to dress himself; whether he played golf; whether he took care of his own financial affairs and paid his own bills; and whether he was under any mental handicap. Finally, the plaintiff was asked whether Sewart would call her husband when he needed something and also when he did not need things.

At the conclusion of this cross-examination, the plaintiff moved for a ruling that the defendants waived the Dead-Man's Act, arguing that the plaintiff could not know the answers to these questions unless she was told by Sewart or was present when Sewart did them. While the trial court refused to rule that the defendants' questions resulted in a blanket waiver of the Dead-Man's Act, the court indicated that it would entertain plaintiff's waiver argument on a question-by-question basis. The plaintiff's attorney proceeded to question her on redirect and asked her whether she recalled specific conversations with Sewart about his relationship with Edward Popham and about Sewart's intent to dispose of his property. The defendants' objections to this line of questioning were sustained under the Dead-Man's Act. After lengthy discussion between counsel and the court concerning the applicability of the Dead-Man's Act, the plaintiff was asked the following question, which she quotes in her brief:

> "Q. Yesterday you answered a long series of questions on cross-examination concerning questions about Thornton Sewart, about his relationship with you, his relationship with Mr. Popham, et cetera. Upon what facts and information did you base the answer that you gave to those questions, yesterday?
>
> A. Because he had told me all these things. Ed told me, and Thorny had told me. Edward had told me, and, of course, I had been with both of them at the time."

Although the defendants objected to this latter question and answer, the trial court did not rule on the objection. Rather, the court reiterated its prior ruling that the defendants' cross-examination was limited and did not result in a waiver of the Dead-Man's Act for all purposes. The plaintiff's attorney thereupon ceased its redirect of the plaintiff.

■ As recognized in *Fleming v. Fleming* (1980), 85 Ill. App. 3d 532, 406 N.E.2d 879, the Dead-Man's Act was created based upon the desire of the legislature and the courts "to protect decedents' estates from depletion based on perjured testimony since it was considered that a party would be prone to testify falsely when such testimony cannot be directly contradicted." (85 Ill. App. 3d at 538, 406 N.E.2d at 883.) Under the general provisions of the Dead-Man's Act, testimony from an interested person concerning conversations and events that took place in the decedent's presence is incompetent and inadmissible. However, in accordance with exception (a), when a witness or adverse party is called by the representative of the deceased and testifies to a conversation with the deceased or an event in such person's presence, the adverse party becomes competent to testify to the same conversation or event. (*Idleman v. Raymer* (1989), 183 Ill. App. 3d 938, 539 N.E.2d 828; *Fleming v. Fleming*, 85 Ill. App. 3d 532, 406 N.E.2d 879; *DeYoung v. Ralley* (1946), 329 Ill. App. 1, 67 N.E.2d 221; see 735 ILCS 5/8—201(a) (West 1992).) The competency to testify extends only to the conversation or events so testified to by the witness called by the representative and not as to other conversations with or events occurring in the presence of the deceased. (*In re Estate of Deskins* (1984), 128 Ill. App. 3d 942, 471 N.E.2d 1018. *Cf. Manning v. Mock* (1983), 119 Ill. App. 3d 788, 457 N.E.2d 447 ("event" when given its plain and ordinary meaning is limited to a happening or occurrence limited to time and place).) In the instant case, contrary to the plaintiff's contentions, the questions posed to the plaintiff by the defendants on cross-examination did not elicit testimony regarding her conversations with Sewart or events that took place in his presence. The questions highlighted by the plaintiff show that she was asked general questions about Sewart based upon her observations of him. She was not asked about any specific conversations she had had with Sewart, and, more specifically, she was not asked about any conversations between Sewart and herself regarding Sewart's relationship with her husband or his testamentary intent. Thus, the door was not opened for plaintiff to testify on redirect concerning those conversations and the trial court was correct in sustaining defendants' objections.

As an additional error under the Dead-Man's Act, the plaintiff

contends that the trial court should have excluded the testimony of Henry Synek, the attorney who represented defendant Taff in her individual capacity and as administrator of Thornton Sewart's estate. Over plaintiff's objection, Synek, who drafted Sewart's will in 1976, was allowed to testify concerning a conversation he had with Sewart in 1976 regarding Sewart's testamentary plan. He stated that Sewart left his estate, except for bequests of one dollar each to his brother and sister and for some other small charitable bequests, to Edward Popham. Synek further stated that he asked Sewart what he wished to do if Edward Popham predeceased him and whether he wished to leave his estate to Edward's wife. Synek testified that Sewart told him, " '[Mrs. Popham] was a real [expletive] to me as well as to him [Mr. Popham], and she hurt him and she hurt me.' " Sewart also had ill feelings toward his brother and sister. Synek stated that he advised Sewart that if no one was specifically named, the estate would revert to Sewart's sister and brother.

The plaintiff objected to Synek's testimony under the Dead-Man's Act because Synek was an interested party and, in accordance with that act, "no *** person directly interested in the action shall be allowed to testify on his or her own behalf." (735 ILCS 5/8—201 (West 1992).) It appears that the basis for plaintiff's objection was that Synek's fees for defending the instant action on behalf of defendant Taff and the decedent's estate would be charged to and paid by the estate.[2] (Synek testified, however, that he was not charging defendant Taff for his representation of her individual interest.)

■ Synek's testimony was not barred by the Dead-Man's Act for several reasons. First, as the trial court found, Synek was not an interested person. Synek would not gain or lose as an immediate and direct result of the suit. (See *In re Estate of Henke* (1990), 203 Ill. App. 3d 975, 561 N.E.2d 314; *Michalski v. Chicago Title & Trust Co.*

---

[2]Plaintiff's argument here is somewhat illusive. The plaintiff raises a conflict of interest issue in that Synek represented defendant Taff in her individual capacity and as representative of Thornton Sewart's estate. He notes that Synek admitted that he expected only to be paid from the estate for the services he rendered. We note that the plaintiff lacks standing to object to Synek's dual representation as she has not demonstrated how her interests have been adversely affected. See *Lavaja v. Carter* (1987), 153 Ill. App. 3d 317, 505 N.E.2d 694 (attorney representing concerned parties is in best position to determine whether a conflict of interest exists); see also *Renard v. Columbia Broadcasting System, Inc.* (1984), 126 Ill. App. 3d 563, 568, 467 N.E.2d 1090, 1094 ("Absent a complaint by the affected client, a party has no status to object to the representation of an adverse party by an attorney of his choice").

(1977), 50 Ill. App. 3d 335, 365 N.E.2d 654.) Synek's right to recover fees against the estate was not contingent upon his successful defense of the estate. Moreover, Synek was not testifying on his own behalf. (See 735 ILCS 5/8—201 (West 1992) ("person directly interested in the action shall [not] be allowed to testify on his *** own behalf").) He was called by the defendants to testify. (See *In re Estate of Henke*, 203 Ill. App. 3d 975, 561 N.E.2d 314 (Dead-Man's Act does not bar witness who did not testify on his own behalf or as an adverse party).) Furthermore, the plaintiff is not a proper party to raise a Dead-Man's Act objection. As indicated above, the Act was created to protect the decedent's estate from depletion based upon perjured testimony. To protect the estate, the Act bars certain testimony from adverse parties or persons directly interested in a lawsuit where the representative of the deceased person sues or defends on behalf of the decedent. (735 ILCS 5/2—801 (West 1992).) It is the representative who is entitled to raise the objection that an adverse party or interested person is incompetent to testify (see *Fleming v. Fleming* (1980), 85 Ill. App. 3d 532, 406 N.E.2d 879); and it is the representative who waives the Dead-Man's Act protection by calling a person to testify to a conversation with the decedent or to an event which took place in the decedent's presence (735 ILCS 5/2—801(a) (West 1992)). (*Cf. Rose v. St. Louis Union Trust Co.* (1968), 99 Ill. App. 2d 81, 241 N.E.2d 16, *aff'd* (1969), 43 Ill. 2d 312, 253 N.E.2d 417 (party or person interested is not incompetent to testify if administrator sues or defends in his individual rather than in his representative capacity); *Kernott v. Behnke* (1941), 311 Ill. App. 389, 36 N.E.2d 575 (where action against defendant individually and as executor of decedent's estate is dismissed as to defendant in his capacity as executor only, party or person interested is no longer incompetent to testify under Dead-Man's Act).) Here, the plaintiff was not defending or suing as the representative of a decedent's estate. The plaintiff was presenting a claim against the estate based on certain alleged conduct by the deceased person. The plaintiff, as the adverse party, was not the appropriate party to object on the basis of the Dead-Man's Act. For these reasons, the plaintiff's attempt to exclude Synek's testimony under the Dead-Man's Act is without merit.

Plaintiff's final argument on appeal is that the judgment entered in favor of the defendants was erroneous. With respect to this argument, we again note the sparsity of citation to authority. We note further that the plaintiff has not set forth with any detail or explanation the theory upon which she is entitled to judgment or the elements of proof for that theory. The plaintiff has not related the evidence presented at trial to her proof requirements; has misinterpreted

her burden of proof and, further, has not argued "manifest weight of the evidence."

■ It appears that plaintiff relies upon our prior decision in her case (*In re Estate of Sewart* (1991), 236 Ill. App. 3d 1, 602 N.E.2d 1277) and our finding therein that the "plaintiff has produced sufficient evidence to create an *inference* of an implied contract." (Emphasis added.) (236 Ill. App. 3d at 12, 602 N.E.2d at 1284.) Rather than discussing evidence that would support her theory of recovery, the plaintiff instead argues that the question "is whether Defendants have introduced anything into the record to negate the inference" (referring to the inference discussed in our earlier opinion).

We disagree with the emphasis which the plaintiff attempts to superimpose upon our earlier opinion. That decision was reached in a summary judgment context and was based upon interrogatories and deposition testimony, as well as the presumption that services rendered to a decedent during his lifetime are not gratuitous when no family relationship exists between the parties. (See *In re Estate of Mallas* (1968), 100 Ill. App. 2d 88, 241 N.E.2d 482.) In that decision we held that, although the plaintiff conceded that "there was no agreement," that concession did not rule out the possibility of an implied contract where there was other evidence from which the possibility of such an implied contract could be inferred. That inference was sufficient to create an issue of fact to negate the propriety of summary adjudication where the court is not permitted to weigh evidence or to make credibility determinations. By no means, however, did our prior decision purport to preempt the function of the trial court to weigh the evidence at trial, where the scope of the evidence is broadened and expanded, to determine whether the plaintiff met her burden to prove by a preponderance of the evidence that an implied contract existed.

Based upon the evidence presented at trial[3], the trial court entered judgment in favor of the defendants thereby determining that the plaintiff had not established by a preponderance of the evidence that an implied contract existed between the Pophams and Sewart. Pursuant to our review of the evidence, we cannot find that that determination was erroneous or against the manifest weight of the evidence.

---

[3]In order to comply with the appellate court opinion page limitations specified by Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994), our summary of the evidence presented at trial has been omitted. This summary can be found in the full opinion, including the nonpublishable Rule 23 material, of *In re Estate of Sewart*, docket No. 1—93—2618.

The general principle governing the creation of an implied contract in the circumstances postured by this case has been articulated in *In re Estate of Mallas* (1968), 100 Ill. App. 2d 88, 241 N.E.2d 482. There it was held that a contract will be implied when the evidence establishes that

> " 'no kin or family relationship exists between the parties, and one accepts and retains the beneficial results of another's services, which were rendered at his own insistence and request and which he had no reason to suppose were gratuitous.' " (100 Ill. App. 2d at 92, 241 N.E.2d at 484-85, quoting *Floyd v. Estate of Smith* (1943), 320 Ill. App. 171, 176, 50 N.E.2d 254.)

(Accord *In re Estate of Brittin* (1993), 247 Ill. App. 3d 756, 617 N.E.2d 877 (summary judgment proceeding).) At trial in the instant case, although evidence was presented by the plaintiff that she performed housekeeping services for Sewart and that she expected to get paid for those services, her testimony was impeached on cross-examination from her deposition wherein she stated she had no such expectation. Although the plaintiff also testified that there was an agreement between Sewart and Edward Popham that Sewart would leave his property to Popham in exchange for services, that testimony was impeached with her deposition testimony that there was no agreement and that the services were performed out of gratitude and friendship.

Evidence also was presented at trial concerning the extended familial relationship, between the Pophams and Sewart and the inclusion of Sewart in all the Popham family celebrations and birthdays. The plaintiff's daughter, Pamela Francis, testified that Sewart "was family to us." She stated that Sewart indicated he wanted her parents and their family to have everything because of the things they did for him and because they were his family. She testified that her parents performed services for Sewart as a result of their friendship and family relationship. She stated that they would not have stopped performing services for Sewart if Sewart did not give them his property.

Further evidence suggested that the plaintiff did not perform the services at Sewart's request, having done many of the alleged tasks outside of Sewart's presence, and instead did so because her husband asked her to. Evidence also conflicted as to the extent of the plaintiff's services. Although the plaintiff testified that she visited Sewart's house weekly and that these visits increased after 1981, Synek testified on behalf of the defendants that, at the time of Sewart's death, Sewart's house was filthy and had an accumulation of newspapers and bottles which would suggest a lack of cleaning over an extensive

period of time. Finally, as will be discussed below, the plaintiff's admission that "there was no agreement," while not conclusive as a matter of law with respect to the existence of an implied contract, could have been considered as proof that there was in fact no agreement to render services for payment, whether express or implied.

∎ At trial, the court weighed the conflicting evidence and inferences created by that evidence and concluded that no contract, implied or otherwise, existed between the Pophams and Sewart. There was sufficient evidence to support this conclusion and to rebut the inference of an implied contract particularly in light of the evidence discussed above.

The plaintiff urges that the result in *Mallas* must control the result in the instant case. We disagree. While we agree with the general principle enunciated in *Mallas*, the facts in *Mallas* are distinguishable. In *Mallas* there was no extended familial relationship, and in *Mallas* the decedent verbally acknowledged an intention to pay the plaintiff for the services she performed. The decedent told several witnesses of his intention to pay the plaintiff, and several of the witnesses testified that they saw the plaintiff perform the services. Here, unlike the facts in *Mallas*, there was no testimony from nonparty witnesses that they heard the decedent express an intention to pay the plaintiff specifically for the services performed or that they saw the plaintiff perform the alleged tasks. Here, too, there was evidence to suggest that Sewart's house was not regularly cleaned, due to a buildup of bottles and newspapers and filth. Testimony that the plaintiff went to Sewart's house only in the accompaniment of her husband, because her husband asked her to go, and that much of her cleaning occurred outside of Sewart's presence also negates the plaintiff's contention that her services were rendered at Sewart's insistence or request or that an agreement existed between them.

∎ The plaintiff contends that Synek's testimony regarding his conversation with Sewart concerning Sewart's will and Sewart's testamentary intent was irrelevant to the issue of Sewart's intent to contract with the Pophams and, further, that Sewart's intent at the time the will was drafted in 1976 was irrelevant to the issue of contract formation which would have germinated in later years. We reject this contention. Synek's testimony was relevant to establish conflicting evidence concerning the relationship that existed between the plaintiff and Sewart. Moreover, plaintiff's argument that Synek's conversation with the deceased occurred prior to the time much of the Pophams' services were rendered and was too far removed would not affect the admissibility or relevancy of Synek's testimony but would affect the weight to be given to that testimony. See *People v.*

*Chambers* (1994), 261 Ill. App. 3d 123, 633 N.E.2d 123; *Countryman v. County of Winnebago* (1985), 135 Ill. App. 3d 384, 481 N.E.2d 1255; *In re M.B.C.* (1984), 125 Ill. App. 3d 512, 466 N.E.2d 273.

■ Plaintiff further contends that the trial court erred in disallowing her redirect examination concerning her understanding of the word "agreement" as it was used in the context of her deposition testimony. Although the deposition of a party can be introduced by the opposing party as an admission or for purposes of impeachment (see 134 Ill. 2d R. 212), as was done in this case, such deposition testimony cannot be utilized by the deponent as substantive evidence at trial (see *Van Steemburg v. General Aviation, Inc.* (1993), 243 Ill. App. 3d 299, 611 N.E.2d 1144 (prior statement in deposition cannot be offered as substantive evidence)). However, once the defendant utilizes the plaintiff's deposition during cross-examination of the plaintiff, the plaintiff should be allowed to refer to her deposition on redirect to clarify the defendant's use of her deposition testimony. (See 134 Ill. 2d R. 212(c) ("If only a part of a deposition is read or used at trial by a party, any other party may at that time read or use or require him to read any other part of the deposition which ought in fairness to be considered in connection with the part read or used").) In the case at bar, when the plaintiff attempted to refer to her deposition testimony on redirect, the defendants objected. The plaintiff's attorney presented an offer of proof that, if allowed to do so, he would put into the record the rest of her deposition testimony concerning the absence of an agreement between Sewart and Edward Popham. (The relevant deposition testimony had been quoted in our prior decision (*In re Estate of Sewart* (1993), 236 Ill. App. 3d at 8-10, 602 N.E.2d at 1282).) After further discussion, it appears that the trial court overruled the defendants' objection and indicated that it would consider the questions and answers referenced by the plaintiff. The court refused, however, to let the plaintiff on redirect explain what she meant in her deposition that "there was no agreement." The plaintiff thereupon submitted the following offer of proof:

> "We would offer to prove that Mrs. Popham interpreted Mr. Synek's use of that word at that point in the deposition to mean a written agreement or a more formal express agreement."

While it may have been error on the part of the trial judge not to permit a brief explanation of the prior testimony of a party used for purposes of impeachment or as an admission, the error in this case is relatively insignificant and not prejudicial. In point of fact, the trial court indicated that it would consider the appellate court's earlier opinion and its references to the plaintiff's deposition testimony that "there was no agreement." In that earlier opinion we noted that

plaintiff's admission that "there was no agreement" or expectancy regarding payment did not conclusively preclude the possibility of an implied-in-fact agreement since a layman may understand the term agreement to denote a formal or express understanding. (See 236 Ill. App. 3d at 10, 602 N.E.2d at 111.) Contrary to the plaintiff's contentions, our earlier opinion did not foreclose the court from considering plaintiff's statements that "there was no agreement" and that she "didn't expect to get paid" as admissions by the plaintiff that there wasn't any contract, express or implied. We merely held that summary judgment on behalf of the defendants could not be predicated solely upon those statements in the context within which they were made. However, the trial court was free to consider and weigh those statements along with any other evidence.

Accordingly, the decision of the trial court was amply supported by the evidence. Although there was conflicting evidence that could support a finding for either party, the trial court was in the best position to view the witnesses and to determine their credibility. (See *In re Estate of Fordyce* (1971), 130 Ill. App. 2d 755, 265 N.E.2d 886.) By granting judgment to the defendants, the trial court concluded that the plaintiff did not prove her case by a preponderance of the evidence. We cannot say that this conclusion was against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS, P.J., and T. O'BRIEN, J., concur.